F. M. RAWLINGS v. HENDERSON HUNT and others.

*Mortgage of thing not in esse, valid—Agricultural lien and mortgage included in one deed—Practice.*

1. A crop to be planted on one's own land, or on land let to him, as well as a crop·planted and in process of cultivation, is the subject of a valid mortgage.

2. An instrument may be so framed as to operate in one part as a mortgage, and in another as an agricultural lien; but to create the latter, it must conform to the requirements of the statute allowing agricultural liens.

3. The plaintiff is legally entitled to the property sued for, by virtue of the first mortgage.

   No equitable rights of the defendant are passed upon.

   The judgment here is confined to this case, and the court takes no notice of the fact stated in the record, as to other cases turning upon the principles applicable to this.

(*Cotton* v. *Willoughby*, 83 N. C., 75; *Harris* v. *Jones, Ib.*, 317; *Clark* v. *Farrar*, 74 N. C., 686; *Patapsco* v. *Magee*, 86 N. C., 350, cited and approved).

CIVIL ACTION in the nature of claim··and delivery, tried at Fall Term, 1883, of NASH Superior Court, before *Philips, J.*

On the 25th day of January, 1882, Jacob Arrington executed to the plaintiff a deed which was thereafter duly recorded. It is set forth in the preamble therein that Arrington was about to engage in the cultivation of various crops·upon a tract of land situate in Nash county, known as the "Hines place," during the year 1882; that he desired to secure to the plaintiff an "agricultural lien," as allowed by the statute providing for such liens; that the plaintiff was to furnish him with advances of cash and supplies to enable him to make his proposed crops, to an amount not exceeding one hundred dollars; and that before the execution of the deed of that sum the plaintiff had advanced to him $70.10 for the purpose mentioned.

This deed, in terms, conveys to the plaintiff a bay horse, and adds: "Also, a lien upon each and every of said crops to be

cultivated and made during the said year, with full power to take possession of any portion, or all of said crops at any time after their maturity, as may be sufficient upon the sale thereof to satisfy said debt, and such advances as shall have been made, and all expenses that may be incurred by the party of the second part (the plaintiff) in executing, probating, recording and enforcing this lien; and if by the first day of December, 1882, the aforesaid indebtedness has not been discharged by the proceeds of sale of said crops, or otherwise, then the party of the second part is authorized to take possession of said property and sell the same, or so much thereof as will satisfy the amount remaining due and all costs and expenses in any way incurred by said seizure and sale."

Between the date of the deed and the first day of July, 1882, the plaintiff advanced to said Arrington the further sum of $29.90, the balance to be advanced as provided by the deed.

After that time, the plaintiff advanced to Arrington the further sum of $24.29, and he promised to repay this sum with the first bale of cotton he might gather from the crops, and accordingly he afterwards delivered to the plaintiff a bale of cotton, to pay the last mentioned sum, of the value of $35.00, and with this exception, the plaintiff received no part of the crops. The money advanced by the plaintiff was used in the production of the crops.

On the 25th of May, 1882, the said Arrington executed to the defendants, Battle, Bunn & Co., another deed, creating an "agricultural lien on the same crops in consideration of not exceeding $500, to be supplied by them in cash or other things necessary to make the crops; and of this sum they advanced from time to time the sum of $416.33. Arrington also owed them the sum of $331.06, a debt due prior to and having no connection with the "agricultural lien." In addition to the lien upon the crops, this deed conveyed to Battle, Bunn & Co. three mules and farming utensils, to secure the advancements of money, &c., and contained a power of sale.

Of the crops produced, Battle, Bunn & Co. received eight bales of cotton—the same sold for $369.75—and this sum was applied by them upon their debt due before and not embraced by the "agricultural lien."

In February, 1883, they took possession of the residue of the crops and sold the same for $180.00. At this sale, the defendant Hunt purchased eleven barrels of corn and fifteen hundred pounds of fodder for $48.00; and the plaintiff brought this action against him before a justice of the peace in Nash county to recover the property so purchased by him. The justice of the peace gave judgment in favor of the plaintiff, and the defendant appealed to the superior court. Battle, Bunn & Co. then intervened, and became also parties defendant in the action.

The parties agreed upon the facts and submitted the whole case to the judgment of the court. The court gave judgment for the defendants and the plaintiff appealed.

*Mr. W. S. Mason,* for plaintiff.
*Messrs. Battle & Bunn* and *Reade, Busbee & Busbee,* for defendants.

MERRIMON, J.   It is settled that a contemplated unplanted crop to be made by the mortgagor on his own land or land let to him, as well as one planted and in process of cultivation, may be the subject of a valid mortgage. *Cotton* v. *Willoughby,* 83 N. C., 75; *Harris* v. *Jones, Ib.,* 317.

The deed from Jacob Arrington to the plaintiff operated as a mortgage with power of sale in favor of the latter, upon the horse and the lien upon the crop to be made conveyed by it, notwithstanding the purpose therein mentioned to create an "agricultural lien."

The defendant insisted that the operative conveying words in the deed do not embrace the crops to be produced. We cannot accept this interpretation of its provisions.

The operative words are, " the party of the first part *sell and convey* to the party of the second part "   *   *   *   "one bay

horse: to have and to hold to the use of the party of the second part, his heirs and assigns forever; *also*, a lien upon each and every of said crops to be cultivated and made during the said year," &c. It then proceeds to give the mortgagee the right to take possession of the crops and sell them in the contingencies specified.

At the end of the word "forever" is a semicolon, denoting a succeeding clause upon the same subject, then comes the word "also." This latter word, as here employed, is a copulative conjunction connecting the two clauses, and it implies likewise, in like manner, in addition to, besides—noting addition or conjunction. See Webster, Worcester and Burrill's Law Dictionary; *Pain* v. *Snelling*, 5 Ea., 87; 4 M. & S., 58; 1 Salk., 239. The word is significant and important; it cannot be treated as meaningless or mere surplusage; it must be treated as doing its complete office in connecting two important clauses of the instrument, and having effect in that way. Besides, if it were treated as the beginning of a separate paragraph or sentence, or of an independent subject, or if it should be rejected altogether, it would leave the provision of the deed as to the liens and the crops in an exceedingly awkward if not meaningless condition.

This case is in all material respects like the cases of *Cotton* v. *Willoughby* and *Harris* v. *Jones, supra*, and must be governed by them.

It was contended on the argument for the appellees that if the deed could operate at all, and as a mortgage of the horse, it could not so operate as to the crops; that as to the crops it was inoperative, or if operative at all in that respect, it constituted only an "agricultural lien" to secure the sum of $29.90 advanced by the plaintiff *after* the execution of the deed.

We think the deed might be treated as creating an "agricultural lien" on the crops to secure the advancement of $29.90. It has all the necessary requisites for that purpose, but it goes further in this case; it has all the essential elements of and it creates a mortgage on the crops as well as the horse. No par-

18

ticular formula of words are essential to create a mortgage of personal property. Any words that express the purpose to create a lien and give the mortgagee power over and control of the property, with power of sale, or to have it sold to pay the mortgage debt, are sufficient. As we have seen in this case, the mortgagor used apt words of conveyance as to personal property, and provided in terms that the plaintiff should have the right to take possession of the property, including the crops, and sell the same to pay his debt.

It is not true, as contended, that an instrument intended as an "agricultural lien" must effectuate that purpose and none other, or be treated as necessarily inoperative for all purposes. A written instrument, whether deed or otherwise, to create such a lien must indeed conform to the statutory requirements, else it cannot operate to create such lien; but if the instrument will bear such a construction as will effectuate the purpose of the parties, it must be so construed and treated. As, for example, if it would not operate to create the "agricultural lien," but has all the requisites of a mortgage of personal property, it would be so treated and upheld. If a written instrument, as a deed, fails to effectuate one purpose specified in it, yet it will effectuate another purpose plainly agreed upon in it, it must be upheld for the latter purpose. We can see no reason why it should not be, and in such case every reason why it should be, as completely as if provided for in a separate instrument. Nor can we see any good reason why the same instrument may not be so framed as to operate in one part of it as a mortgage and in another as an "agricultural lien."

It was suggested on the argument that this court had decided otherwise in *Clark* v. *Farrar*, 74 N. C., 685. A slight examination of that case will show the contrary. It decides the instrument there in question was fatally defective, and did not create an "agricultural lien"; but Mr. Justice BYNUM, delivering the opinion, expressly passed by the question whether or not it could operate as a mortgage. He said, "without stopping to

enquire whether the only operative words in the defendant's deed, to-wit: "the said O. C. Farrar *shall have a lien* on all crops," &c., can be construed into a conveyance of the crops to the defendant, we pass to that view of this part of the case which is decisive." He then properly proceeds to show that the instrument was false upon its face and fraudulent as to creditors, and could not, under the guise of an "agricultural lien," deceive and mislead them to their prejudice.

And it was also insisted that this court had decided otherwise in *Patapsco* v. *Magee*, 86 N. C., 350. That case does not justly bear the construction the defendant's counsel give it. It cites *Clark* v. *Farrar, supra,* as in point for a purpose, and so it was. The learned judge then added, *obiter*, that, "according to the same authority, an instrument, which, as intended by the parties to operate as an agricultural lien, and which purports to be one, must take effect *as such*, or not at all, and will not be permitted to prevail as a mortgage." We have seen that the case referred to does not sustain the view of it thus expressed. Besides, the court then adverts to the fact, that the instrument there under consideration did not convey or purport to convey the title of the property, which was the subject of agreement.

The plaintiff, in our judgment, is entitled by virtue of the mortgage in his favor, to have the possession of the property, including all the crops therein mentioned, to sell the same and pay his mortgage debt, or so much thereof as has not been discharged; and the surplus, if any, will belong to the defendants according to their respective rights, taking it that Arrington owes them, as they allege, for advancements.

This is an action at law; no equitable rights are set up in the pleadings; and we are not called upon, indeed, we cannot undertake, to adjust any possible equities in favor of the defendants. We are not at liberty to express an opinion as to whether or not the plaintiff is chargeable in equity with the horse mentioned in the deed, or how he must apply the proceeds of the bale of cotton he received as part of the crops. We pass only upon the legal rights of the plaintiff as they appear in the record.

The court ought to have given judgment for the plaintiff upon the case submitted to it, and as it did not, there is error, for which the judgment must be reversed, and judgment entered here for the plaintiff.

This judgment does not extend to any other case. This court cannot take notice of and act upon a stipulation as to other cases turning upon the principles applicable to this case.

Judgment reversed, and judgment for the plaintiff.

Error.                                              Reversed.