W. W. GWATHNEY, C. G. ELLIOTT and TEMPLE GWATHNEY,. partners as Gwathney & Co., v. A. E. ETHERIDGE and E. C.. BROOKS, trading as Etheridge & Brooks.

*Agricultural Liens—Chattel Mortgages—Description of Property in Conveyances, &c.*

1. An agreement in writing, whereby a farmer professes to give a lien for supplies upon the crops to be raised on certain lands *described,.* and upon *any other land he may cultivate in the county,* is effectual as to the crops on the land described, but void as to those raised on any other land.

2. Mortgages or liens under the statute of this State, on crops to be produced, are to be upheld only where the land on which they are to be raised is identified at the time the lien is created.

3. It is sufficient to describe the land as *a field or farm in the possession of* the mortgagor or seller, or lands *owned or rented* by him during the present year—the then possession fixing the identity.

CIVIL ACTION, tried before *Avery, J.,* at Fall Term, 1887, of the Superior Court of HALIFAX County.

It appears that on the 28th day of January, 1884, the plaintiffs commission merchants agreed to supply to R. W. Carter, A. J. Wood and W. W. Carter, from time to time, "supplies" and money during the year 1884, to an amount not exceeding $1,000, to be by them expended in the cultivation of a crop to be produced during that year; and they executed to the plaintiffs, on that day, an agreement in writing, creating a lien in their favor, upon the crop so to be cultivated, to secure the payment of the "supplies" and money so to be supplied, as allowed by the statute (*The Code,* § 1799). This agreement provided, among other things, in respect to such "supplies" and money, that the same were to be used and expended in the cultivation of a crop during that year, upon "the lands of D. B. Bell, situated in the County of Halifax, adjoining the lands of T. J. Ryan and others, *and upon any other lands*

*we may cultivate in said county.*" It further provided as follows: "And we do hereby give to the said W. W. Gwathney & Co. a lien upon all the crops which may be made by us upon said lands during said year." * * * And for the further securing of said advances to be made to us, we do hereby sell and convey to W. W. Gwathney & Co., and their assigns, the following described property, to-wit.: "All our interest in the rents or shares of all the crops that may be made on said lands, *or any other* lands we *may* cultivate in said county of Halifax," &c.

The plaintiffs allege in their complaint, that the contemplated crop was produced, but their debt, so created and secured, was not paid, and that the makers of the agreement and lien mentioned, shipped to the defendants commission merchants "fifty bales of cotton of the crops, rents and shares of crops aforesaid, on which the plaintiffs had a lien as aforesaid, and the same were, by said defendants, sold and converted to their own use," &c.

The following is a copy of so much of the case settled on appeal as need be set forth here:

"It is agreed, as a fact, that the cotton in controversy was made by W. W. Carter, on his home tract of land, not on the D. B. Bell land, and shipped by him to Etheridge & Brooks; and also, that R. H. Carter and A. J. Wood raised a crop for the year 1884, on the D. B. Bell land; that they had no interest in the said crop raised by W. W. Carter, and W. W. Carter was not interested in the crop raised on the Bell land; the advances made by plaintiffs were not, in fact, used on the W. W. Carter land, while he did use the advances made by Etheridge & Brooks on the crop raised on his own land.

"It was agreed, that the cotton was worth $298.16. It is agreed, that if the plaintiffs are entitled to judgment at all, they are entitled to interest from January 22, 1885, on that amount.

"Upon the facts admitted, the Court instructed the jury, that the title to the cotton in controversy passed to plaintiffs by the mortgage deed, and they were entitled to the value of it."

There was a verdict and judgment for the plaintiffs, and the defendants, having excepted, appealed to this Court.

*Mr. T. M. Hill*, for the plaintiffs.
*Mr. J. M. Grizzard* (by brief), for the defendants.

MERRIMON, J., (after stating the case as above). It appears that the cotton in question was not produced on the land, described in the written agreement creating the lien as "the land of D. B. Bell," &c., and in our judgment, the lien, relied upon by the plaintiffs was operative and effectual only as to the cotton produced on that land, which specially designated and specified as the particular land, upon which a crop was to be cultivated and produced, to which the lien should attach. As to it, there was present certainty that gave point and direction to the lien, and identified, in an important sense, that property to which it should attach, and upon which it should operate and be effectual. It is essential to an operative sale of property in existence, or yet to be produced—as crops from land—that there shall be, *at the time of the contract of sale*, something that specifies, separates and identifies the property sold, so that it may be distinguished from other and like property, presently, or when it comes into existence. There can be no sale of property where the seller cannot know what he sells, and the buyer cannot know what he buys, as to its identity.

Hence, we think that so much of the agreement, in writing, in respect to the lands to be cultivated, and crops to be produced thereon, as is embraced in the clause, "and upon any other lands we *may* cultivate in said county," is inoperative and void, for uncertainty. The clause did not presently,

at the time of the contract of sale, designate any particular land to be cultivated, and the crops to be produced on them; the plaintiffs could not then know what crops, if any, they were buying, or what they would get at the end of the year, nor did the sellers know what they were selling; there was then nothing certain, to give point and direction to the lien sought to be crested, as there would have been, if the description had been the "crops to be produced on W. W. Carter's home place—his own land," or the like description. It is not sufficient that the crop will be certain, and have identity, when it shall be produced on any lands in Halifax County, by the parties undertaking to give the lien. The nature of a sale requires, that the thing sold shall have distinctive identity at the time it is sold, whether it is then capable of actual delivery, or it will become so at a future time, as the product of something presently identified.

The sale or mortgage of prospective crops, yet to be produced from the soil, is of modern origin and growth. How to sell something that yet has no existence, but is to be produced out of something in existence, and pass the title to it, is not free from embarrassment, but the multiplying wants and necessities of society render such sales necessary. Legislatures have, in some measure, provided for them, and the Courts uphold them, as far as they can, consistently with settled principles of law. But it seems that the Courts have not gone further—certainly this Court has not—than to decide that mortgages or liens on crops to be produced, as allowed by the statute, will be upheld, when the land on which the crop is to be produced is designated—identified in some way, at the time the lien shall be created. To go beyond this, would strike down some of the essential elements of a sale, of a mortgage and liens created by a simple agreement in writing, as allowed by the statute in certain cases, and establish a new sort of floating conveyance, that could be applied at the convenience of the party taking benefit by

it, and pass the title to, and create liens upon, property not in existence, or even contemplated at the time of the sale, when and as soon as it might come into existence. This could not, it seems to us, fail to give rise to great uncertainty, confusion and injustice in important classes of business transactions.

Judge STORY, writing on this subject, in his work on Sales, § 185, says: that if the "thing sold or mortgaged be the natural product, or expected increase, of something to which the seller or mortgagor has a present valid right, the sale or mortgage will be good." Another writer says, that "whatever has a potential existence, is the subject of sale or mortgage; for example, an unplanted crop or future products of a farm, to be raised by one in possession of land, as owner or lessee, is the subject of a sale or mortgage." Jones on Chat. Mort., § 143. So, the wine to be made from a certain vineyard, or the wool that shall be grown upon a *certain flock* of sheep. Such things have no actual existence, but as they are naturally expected to spring from something in which the owner *has a present right*, they have what is considered a potential existence, and are held to be the subject of sale or mortgage. Benjamin on Sales, 63, 103; *Robinson* v. *Ezzell,* 72 N. C., 231; *Cotton* v. *Willoughby,* 83 N. C., 75; *Harriss* v. *Jones,* Id., 317; *Rawlings* v. *Hunt,* 90 N. C., 270; *Wooten* v. *Hill,* 98 N. C., 48.

In *Atkinson* v. *Graves, supra,* Mr. Justice ASHE said: "A mortgage or sale of a crop, to be raised on a *certain field or farm in the possession* of the mortgagor or seller, is as far as the principle has been carried in respect to planted crops; but it has never, as we are aware, been extended to the products of the soil to be raised, without designating the place where they are to be produced."

The learned counsel for the appellees cited and relied much upon *Woodlief* v. *Harris,* 95 N. C., 211, in which the Chief Justice said: "The other objection, that no place is de-

scribed on which the crop is to be made, is not sustained. It gives a lien on all crops raised on lands *owned or rented by me during the present year.*" We think this case does not contravene what we have here said, or the authority cited. The words "lands *owned or rented* by me during the present year," described property that the mortgagor then owned or had leased for that year—not " *any other* lands he *may* (might) cultivate" that year, as, in the present case, the agreement in question provides. In that case, *Atkinson* v. *Graves, supra,* is cited with approval, and the argument is in effect the same in both cases.

There is error. The appellants are entitled to a new trial and we so adjudge. To that end let this opinion be certified to the Superior Court.

Error.                                       *Venire de novo.*