JOHN D. BROWN v. T. D. MILLER et al.

*Chattel Mortgage—Lien—Description of Property.*

1. A chattel mortgage upon the mortgagor's "entire crop of cotton to be raised by me or my tenants on all my lands during the year 1889" sufficiently designates the property conveyed to make the instrument operative, and the fact that the land upon which the crop was planted was, while it was growing, recovered from the mortgagor by one claiming under superior title, did not affect the validity of the lien.

2. A subsequent mortgage on same property given to secure advancements of "supplies," there being nothing to show for what purpose the supplies were furnished, did not create a prior lien.

CIVIL ACTION, tried at Fall Term, 1890, of MECKLENBURG Superior Court, *Brown, J.,* presiding.

The action is brought to recover the value of a bale of cotton which, it is alleged, belonged to the plaintiff and was converted by the defendants to their own use.

On the trial the plaintiff put in evidence a chattel mortgage proved and registered on the 23d of January, 1889, executed to him by John P. Patterson, whereby the latter purported and undertook to convey to the plaintiff his "entire crop of cotton to be raised by me or my tenants on all my

lands during the year 1889," etc.   The mortgagor was examined as a witness for the plaintiff, and testified that "the defendants got the bale of cotton, which is the subject of this controversy, from me in October, 1889."   The plaintiff then asked the witness: "On whose land was that cotton raised?" Under objection, the Court allowed the witness to say: "On the lands I live on at home, and have been on for fifteen years.   The lands were known as my lands.   I paid for them as my lands.   On the 2d of February, 1889, I was declared by the Court (in an action) not to be the owner." One Fisher obtained judgment in his favor for the land in the action referred to, and afterwards Patterson leased the land from him in June, 1889, and agreed to pay him one bale of cotton as rent, which Fisher directed him to leave at Nesbit's gin.   The bale of cotton in question was produced on the lands mentioned, and which Fisher so recovered.

·In March, 1889, Patterson executed to the defendants his other mortgage, which was duly registered on the 4th of the same month, to secure a debt due to them for "supplies," which they furnished to him, and the cotton in controversy was embraced by this mortgage.   Patterson further testified that he delivered the bale of cotton in question to defendants as the rent he owed Fisher, and directed them to deliver it to him as such rent.   Nesbit (who is one of the defendants) took the bale and refused to so deliver it, saying that the defendants wanted it on account of their mortgage debt above mentioned.   Patterson said he was willing to this if Fisher was willing.   The defendants took the bale, and Patterson the next week delivered to Fisher another bale for the rent due him.

The Court submitted to the jury two issues, the first of which was: "Did the defendants wrongfully convert the bale of cotton belonging to the plaintiff as alleged?"   The defendants insisted that the Court should instruct the jury to respond No to this issue, but on the contrary it told

them, that if they believed the evidence, to respond Yes, and the defendants excepted.

There was a verdict and judgment for the plaintiff, and the defendants appealed, assigning error as follows:

" 1. For admission of evidence objected to, as above set forth.

" 2. For refusal to charge that, upon all the evidence, the jury should answer the first issue No.

" 3. For error in charging that, if the jury believed the evidence, they should answer the first issue Yes."

*Mr. G. F. Bason*, for plaintiff.
*Messrs. Jones & Tillett* (by brief), for defendants.

MERRIMON, C. J.—after stating the case: The deed of mortgage under which the plaintiff claims title to the bale of cotton in controversy sufficiently designates and identifies the land upon which it was to be produced, and the cotton itself, to render this deed operative and effectual for the purpose contemplated by it. The purpose of this description was not to designate land to which the mortgagor certainly had absolute or perfect title, but the land claimed by him as his at the time he executed the deed, and upon which he intended that himself or his tenants should thereafter produce the cotton crop that the mortgage was intended to embrace. The simple purpose was to identify the land claimed by him as his on which the crop of cotton was to be produced. The mere fact that a third party, after the deed was executed, recovered the land sufficiently described by it, could not affect the sufficiency of the description or the deed. The land described as " my (the mortgagor's) land" remained the same. The description, the designation of it, was not destroyed or rendered less certain.

The cotton crop conveyed by the deed was sufficiently designated It was not an indefinite part of it, but all—

" the entire crop of cotton to be raised by me (the mortgagor) or my tenants on all my lands during the year 1889"—that is, the " entire crop " so raised on the land described as " my (the mortgagor's) land." The deed identified the land and the cotton crop embraced by it with such definiteness as that the same could be certainly ascertained and known. *Wood-lief* v. *Harris*, 95 N. C., 211; *Gwathmey* v. *Etheridge*, 99 N. C., 571 ; *State* v. *Logan*, 100 N. C., 454.

Nor could the supervenient rights of Fisher, after he recovered the lands from the mortgagor, as the latter's landlord, to rent—the one bale of cotton—render the mortgage inoperative, except to the extent of the rent. As to this, the statute (*The Code*, § 1754) gave the landlord a prior lien for the rent; but the whole cotton crop belonged to the plaintiff, subject only to that lien. As between the plaintiff and the mortgagor the mortgage remained effectual, except as to the rent.

The defendants contend, however, that the mortgagor, Patterson, executed to them in March next after Fisher recovered the land from him a mortgage to secure a debt created for "supplies," which embraced the bale of cotton in controversy, and, therefore, they had good title to the same. This contention is without force. The last mentioned mortgage was, in effect, a mortgage second to that of the plaintiff as to the cotton crop, including the bale in question. In no aspect of this second mortgage, so far as appears, can it be treated as creating a prior lien in favor of the defendants, as allowed in certain cases by the statute (*The Code*, § 1799). It does not appear how, or for what purpose, or on what account the "supplies" were made by the defendants to the mortgagor. *Rawlings* v. *Hunt*, 90 N. C., 270, and cases there cited. The defendants further contend that the bale of cotton in question belonged to Fisher, the landlord, as and for the rent due to him from Patterson. We do not think the evidence went to prove that this bale of cotton was delivered

to the landlord to pay the rent so due to him    Accepting the evidence pertinent as true, it only showed that Patterson, the tenant, at first intended that it should go to pay the rent, but the defendants did not so receive it for the landlord; they insisted that they should have it on account of their mortgage debt; the tenant, their mortgage debtor, consented, and afterwards he delivered to his landlord another and different bale in discharge of the rent due to him.    This certainly is the fair and just interpretation of the facts as they appear.

Affirmed.