J. B. NICHOLS & BRO. v. ANDREW SPELLER.

*Agricultural Lien—Chattel Mortgage—Agricultural Supplies.*

1. One who advances money or supplies, on an agricultural lien, for making a crop, is not bound to see that they are used on the farm, his duty being discharged by furnishing them.

2. An instrument which gives a lien on a crop for supplies to be furnished in making a crop and also conveys personal property as additional security, with the ordinary powers of sale, is valid both as a chattel mortgage and an agricultural lien and, as between the parties, in the absence of fraud and compulsion, the lien attaches for dry goods, shoes, tobacco, powders, snuff and candy, without a showing that such articles were actually used in making the crop.

ACTION OF CLAIM and delivery, tried before *Robinson, J.,* at Fall term, 1896, of BERTIE Superior Court. A jury trial was waived, and the court found the facts. The plaintiffs introduced a lien bond from Andrew Speller to plaintiffs, as follows: "Whereas, J. B. Nichols & Bro. have this day agreed to make advances of supplies and money to Andrew Speller during the year 1893, not to exceed $750, for the cultivation of crop upon the following described land [describing the land]: Now, therefore, in consideration of the premises, I promise to pay the amount advanced me on or before the first of November, 1893, and do hereby give to Nichols & Bro. a lien upon all the crop which may be made by me on said land during the year, to the extent of the advances made, in accordance with the statute in such case made and allowed, and if I fail to pay, by the time specified, Nichols & Bro. shall have power to take possession of the crop, sell the same, and apply the proceeds to the payment of the advances, and the surplus, if any, to be paid to Andrew Speller. And, for the further securing of the advances, I do hereby give and convey to them these articles of personal property: One black horse mule [and other

mules described, cart, and wagon], and all other personal
property, of every kind, I now possess, but on this special
trust: that, if I fail to pay in pursuance of said agreement
they may sell the property, or so much thereof as may be
necessary, for cash, at public auction, first giving twenty
days' notice at three public places in Bertie county, of the
time and place of sale, and apply the proceeds, etc.    It is
further agreed that, if Andrew Speller shall from any
cause fail to cultivate the crop or do any act the effect of
which would defeat the objects of this conveyance, then
Nichols & Bro. shall not be obliged to make any further
advances, and the indebtedness already incurred shall be-
come due and collectable at once, in the manner herein pro-
vided." Dated March 24, 1893, and signed and sealed by
Andrew Speller.    The plaintiff also put in evidence an
itemized account, amounting to $782.68, and credited with
$623.78, leaving a balance due to Nichols & Bro. from
Andrew Speller of $158.90    J. B. Nichols testified that
he was a member of the firm of J. B. Nichols & Bro., and
that the articles charged in the account were furnished
Andrew Speller under the contract (set out above).    "I
made the bargain with him, and the goods were sold under
the contract.    He admitted to me that he owed me a bal-,
ance of $158 when I exhibited the account to him.    The
whole amount was advanced.    He admitted the account,
and asked for more time on it.    Outside of our agreement
(as set out above), nothing was said at the time of getting
the various articles charged in the itemized bill.    He called
for the articles, and got them at the prices charged, which
were the usual prices.    He was not my tenant or the firm's
tenant; farmed on his own land."    M. L. Spruill testified,
after objection on the part of defendant, which was over-
ruled, and an exception noted:    "The articles read over
to me [counsel having read over the underscored articles,

which defendant claims were not advancements] are neces-
sary supplies for agricultural purposes. [The articles
underscored are as follows: Flannel goods, calicoes, home-
spun, buttons, spool cotton, sugar, dipper, merchandise,
shoes, coffee, powders, salt, snuff, flour, cakes, candy, hose,
lye, soap, hat, cap, velvet, homespun, and articles of a
similar character.] I am a farmer of several years' experi-
ence, and I live near defendant." The items of the ac-
count underscored, amounting to the sum of $89.20, were
objected to by defendant, on the ground that they were
not agricultural supplies and advances. It was admitted
that all of the items were sold and furnished after the exe-
cution of the lien bond, except the sum of $56.14, which
was anterior to the execution of said bond. In apt time,
defendant asked in writing the following instructions:
"That in order for plaintiff to rcover for any goods, shoes,
tobacco, etc., they must show affirmatively that such arti
cles were used for the purpose of making a crop." "That
plaintiffs have not shown affirmatively that such articles
were thus used, and that they cannot be allowed the plain-
tiffs in this action." "That in order for plaintiff to re-
cover for the sugar, coffee, etc., they must show affirma-
tively that such articles were reasonable and necessary for
use of defendant to enable him to make the crop." "That
plaintiff has not shown this, and is not entitled to recover
for such items in this action."

All of these instructions were refused, and defendants
excepted. There was judgment for the plaintiffs and de-
fendants appealed.

*Mr. Francis D. Winston*, for plaintiffs.
*Messrs. Martin & Peebles*, for defendant (appellant).

DOUGLAS, J.: There are three exceptions relied upon by
the defendant appellant, all to the refusal of the court

below to give special instructions prayed by the defendant. These instructions practically depended upon the single question whether certain articles, such as dry goods, shoes, tobacco, powders, snuff and candy, were or could be covered by an agricultural lien, under section 1799 of the Code.

The lien in question not only gave "a lien upon all the crops," to be made by the defendant upon the land in question, with full power to take and sell upon default; but also in apt and effective terms conveyed to the plaintiff, as further security for such advances, four mules and other personal property, with the ordinary powers of sale. This paper was therefore a valid chattel mortgage as to the personal property, and equivalent to a mortgage as to the crops. *Rawlings* v. *Hunt*, 90 N. C., 270. There is no allegation of fraud, compulsion or other undue influence in the execution of the lien, or the purchase or selection of the goods. They appear to have been bought at the usual prices by the defendant, and the debt therefrom resulting admitted by him. The appellant is the original lienor, and the original parties to the lien are the only parties before this court. Under these circumstances, we see no reason why the defendant could not purchase such goods as he saw fit, and charge his own property with the payment of the debt. Section 1799 of the Code was not intended simply to permit a person to give a lien upon his crop for advances; but also to give such a lien a *"preference to all other liens existing or otherwise* to the extent of such advance." Therefore, it should be strictly construed when the rights of other creditors intervene. Even where such claims do exist, it has been held that the mortgagor must determine his own needs in conducting his farm, and that his acceptance must be deemed conclusive between the parties, and not less so upon the claim of a subsequently

derived title, and that the plaintiff was not bound to see that the property was used on the farm—his duty being discharged by furnishing it.    *Womble* v. *Leach*, 83 N. C., 84.    In the leading case of *Clark* v. *Farrar*, 74 N. C., 686, this court, holding that an agricultural lien, valid upon its face, was void because it did not speak the truth, says that the deed may be good between the parties to it, though not good against a purchaser for value.    We are not aware of any case wherein this court has held the contrary, between the original parties.  As between them, even registration is not essential.    *Gay* v. *Nash*, 78 N. C., 100, cited and approved in *Reese* v. *Cole*, 93 N. C., 87.    The restrictive provisions in section 1799 of the Code are manifestly for the security of creditors and others dealing with the debtor.    *Reese* v. *Cole*, *supra*.

If there were any elements of fraud or compulsion in this case, our judgment might be different, but as it is presented to us we can see no error.    Whatever may be our sympathies, we cannot undertake to set up over parties, *sui juris*, *a quasi* guardianship repugnant to our institutions and dangerously infringing upon the *jus disponendi* inseparable from ownership.

Affirmed.