W. L. HURLEY & SONS v. ANG. RAY.

(Filed 13 September, 1912.)

1. Mortgages—Cropper—Lands Designated—Insufficiency.

In order to constitute a valid mortgage on a crop, the land upon which the crop is to be cultivated must be designated, and when the mortgage describes certain lands and provides that the mortgage also covers the crop on "any other lands the mortgagor may cultivate," it is effective as to the lands described and void as to the other crops in the absence of other and more definite description.

2. Mortgages—Cropper—The Crop Applicable.

Only the crops to be cultivated next after the execution of a mortgage may be included in the mortgage of crop to be raised on the lands designated.

3. Mortgages—Cropper—Land Designated—Any Other Crop Cultivated—Words and Phrases.

In a mortgage on crops on lands, the expression, "any other crops he (the lessor) may tend," is held to be substantially the same as if expressed, "any other crops he may cultivate."

4. Mortgages—Cropper—Lands Designated—Other Lands—Description.

In a mortgage on crops to be grown on lands, the lands were designated as those whereon the mortgagor resided, and on any other lands he may tend, and on 25 acres joining certain other and designated owners. There was evidence tending to show that the mortgagor cultivated crops on the lands whereon he resided, and in an action by the mortgagee for the crops, it is *Held*, that it was competent for the plaintiff to show that the crops were cultivated by the defendant on the home place and on the 25-acre tract; and it was for the jury to determine as to the intention of the parties to include them in the mortgage.

5. Mortgages—Cropper—Lands Designated—Ownership—False Description.

The mere fact that a mortgagor of crops to be cultivated on certain designated lands described himself as the owner thereof, when he was not in fact the owner, will not of itself defeat the right of the mortgagee to recover the crops grown on the lands.

6. Contracts—Lands—Selection—Ownership.

One who is put into possession of a 50-acre tract of land under a parol agreement that he is to have 12 acres thereof to be by him selected, is not the owner of the 12 acres until it is selected and conveyed to him.

APPEAL by plaintiffs from *Cooke, J.,* at August Term, 1912, of MONTGOMERY.

This action was commenced against the defendant, Ang. Ray, to recover a crop made in 1911, and Allen & Co. were permitted to interplead.

On 25 March, 1911, the defendant Ray executed to the interpleaders a chattel mortgage to secure $154.89, in which the words descriptive of the crop conveyed were as follows: "My entire crop of cotton, cotton seed, corn, dry feed and peas, which I may raise or cause to be raised during year 1911 on my own land and J. C. Currie's land, this being in the neighborhood of T. S. Leak, Hamp Baldwin, and others, and on or about on a road running from Malcolm Blue's to McLeod's mill, this being where I now live or near where I now live, in Rock Springs Township, N. C., all of which is now in my possession and upon which there is no encumbrance."

On 30 April, 1911, the said Ray executed to the plaintiffs a chattel mortgage to secure $392.29, due 1 November, 1911, in which the words descriptive of the crop conveyed were as follows: "My entire crop, such as corn and cotton, cotton seed and feed of all descriptions, to be raised on my land (or any other lands) that I may tend. Twenty-five acres of land, joining Hamp Baldwin and Jim Bennette, bought from J. C. Currie, the land where I now live, my house and premises, is on the land."

The mortgage to the plaintiffs was registered on 29 April, 1911, and the one to the interpleaders on 23 November, 1911.

It appears from the evidence that in 1910 the defendant was let into possession by one J. C. Currie of a large tract of land containing about 761 acres owned by said Currie, of which a 50-acre tract, called the Wilson tract, was a part; that the crop in dispute was raised on a part of this Wilson tract and on a part of the large tract adjoining the Wilson tract; that the defendant resided on the part called the Wilson tract; that at the time the defendant was let into possession, the defendant and J. C. Currie entered into a parol agreement that the defendant could select 12 acres of land from the Wilson 50-acre tract and

call for deed for same from said Currie; that defendant built on said Wilson tract a dwelling-house and some outhouses, and also raised a crop in 1910 and 1911 on the said lands, a part being on the Wilson tract and a part on the adjoining land; that at the time the defendant mortgaged the crops to the plaintiffs no land had been selected by the defendant, no land set apart or deeded to him; that after the seizure of the crop by the plaintiff and after the institution of this action, the defendant selected 12 acres of land of the Wilson tract, mostly in the woods, adjoining the lands on which the crops in dispute were grown, practically leaving out all the land he had tended and on which most of the crops in dispute were grown, and obtained a deed for the land so selected.

W. L. Hurley testified: "I know the lands on which the crops were grown that were conveyed in this mortgage. I went over the lands before the mortgage was given, with the defendant. The lands that Ray cultivated lay right where his house is; joins Baldwin and Jim Bennett. Ray did not cultivate any other lands that year, that I know of. I don't know exactly how many acres there were. I seized the crops on Ray's land, that he claimed."

Randall Hurley testified: "I know the lands described in the mortgage; 25 acres; that is where he lives, where his house is. I have been over the lands and they are the lands described in the mortgage."

The defendant Ray, among other things, testified: "I did not raise any crop this year on any other land not described in the mortgage to W. L. Hurley & Sons."

There was other evidence tending to prove that the land cultivated in 1911 adjoined Bennett and Baldwin.

His Honor held that under the description in the mortgage to the plaintiffs they were entitled to recover the crops raised on the 12 acres of land deeded to the defendant Ray, and that they could not recover the crops raised on the other land, and plaintiffs excepted and appealed from the judgment rendered.

*Charles A. Armstrong for plaintiffs.*
*R. T. Poole for interpleaders.*

ALLEN, J. The authorities fully sustain the position that to constitute a valid mortgage upon a crop there must be some designation of the land upon which the crop is to be cultivated (*Atkinson v. Graves,* 91 N. C., 99; *Rountree v. Britt,* 94 N. C., 106; *S. v. Garris,* 98 N. C., 737; *Harris v. Allen,* 104 N. C., 87), and that a conveyance of the crops on lands described, and on any other lands the mortgagor may cultivate, is effective as to the crops on the lands described and void as to other crops (*Gwathney v. Ethridge,* 99 N. C., 571; *Weil v. Flowers,* 109 N. C., 217; *Perry v. Bragg,* 109 N. C., 304; *Crinkley v. Edgerton,* 113 N. C., 146).

It has also been held that the crop cultivated next after the execution of the mortgage may be conveyed, and no other (*Wooten v. Hill,* 98 N. C., 49; *Smith v. Coor,* 104 N. C., 139), and that when the mortgage conveys a crop to secure a note due in the fall of the year after its execution, that the inference is unmistakable that the crop of that year is referred to and conveyed. *Taylor v. Hodges,* 105 N. C., 344.

We see no substantial difference between the language, "any other crops he may cultivate," and that of "any other crop he may tend," and if the description in the mortgage to the plaintiffs stopped here, we would follow the ruling of his Honor, but there are other and apt words of description, to wit, "25 acres joining Hamp Baldwin and Jim Bennett," which will not necessarily fail because of the statement that it was the land of the mortgagor or land bought from J. C. Currie.

In *Proctor v. Pool,* 15 N. C., 373, *Chief Justice Ruffin,* speaking of inconsistent descriptions in a deed, says: "It is a general rule, that if the description be so vague or contradictory that it cannot be told what thing in particular is meant, the deed is void. But it is also a general rule, that the deed shall be supported, if possible; and if by any means different descriptions can be reconciled, they shall be, or, if they be irreconcilable, yet if one of them sufficiently points out the thing, so as to render it certain that it was the one intended, a false or mistaken reference to another particular shall not overrule that which is already rendered certain. Attempts have been made to establish artificial rules for discovering the intention, and the

offices of terms of general and particular description defined. The truth is, no positive rule can be laid down, for as each subject differs in some respects from another, and each writer will be more or less precise or perspicuous in expressing himself, the whole instrument is to be looked at, and the inquiry then made, Can it be found out from this what the party means? In some cases it is clear that only that thing is meant in which all the particulars of the description concur. In others, the description may be by several particulars, and distinct things are found, of which one answers to the description and another to the other. It would seem in such case that the conveyance would be inoperative, because it was intended to pass one only, and it cannot be determined which one; though there is most respectable authority that both should pass, rather than neither. *Worthington v. Hylyer,* 4 Mass., 196. But there seems to be no danger of mistaking the intention of the parties when the thing is given by a particular name, by which it is well known, or by any other description which completely identifies it, although another particular be added, which does not apply, it is true, to the thing as before described, but is equally inapplicable to anything else. In such case the effect of the true description ought not to be weakened by a further and unnecessary description which is false," and this has been approved in *Shaffer v. Hahn,* 111 N. C., 1, and in *Peebles v. Graham,* 128 N. C., 227.

Applying this principle, we are of opinion there was evidence which entitled the plaintiffs to have their cause submitted to the jury, upon the question of the ownership by them of the crops raised on other land than the 12 acres set apart to the defendant Ray, and that they are the owners if the jury shall find that the crops were grown on land adjoining Baldwin and Bennett, and that it was the intention of the parties to convey these to the plaintiffs.

The crop in controversy is that of 1911. The defendant Ray entered into possession of the land under a parol agreement with the owner to sell him 12 acres of a larger tract, not designated or described, and to be selected thereafter, and the evidence of the plaintiffs tends to prove that he cultivated more

than 12 acres in one lot of land, adjoining the lands of Hamp Baldwin and Jim Bennett, and that the 12 acres were not set apart until after the crops were seized in this action. As the contract with the owner was in parol, Ray did not own any land, nor had he bought any from the owner, as none had been set apart or selected, and his house and premises were on all the land cultivated by him, as well as on the 12 acres afterwards allotted.

It follows, therefore, that there was error, and a new trial is ordered.

New trial.