JONES-PHILLIPS COMPANY v. D. B. McCORMICK ET ALS.

(Filed 19 September, 1917.)

**Liens, Agricultural—Form—Statutes—Interpretation—Contracts.**

Our statute, Revisal, sec. 2055, requires no particular form for the written instrument creating a valid agricultural lien but that it be substantially according to that therein prescribed; and our courts in construing it will look to the substance rather than the form and regard the entire writing with the view of ascertaining and effectuating the intention of the parties; and an instrument expressing itself to be an agricultural lien and given in consideration of money or goods to be advanced for the purpose of making crops on certain land for the current year, with certain other property pledged as additional security, is sufficient without further designation, it appearing that the parties intended it to be one. The rules for interpreting contracts discussed and applied by WALKER, J.

CIVIL ACTION tried before *Cox, J.,* at March Term, 1917, of LEE.

This action was brought by plaintiff against D. B. McCormick and the copartnership of Griffin & Saunders to recover the possession of two bales of cotton, one buggy, and other personal property, which he claimed under an agricultural lien and a chattel mortgage executed by D. B. McCormick to him 15 April, 1914, which mortgage is in proper form, but subsequent in date and time of registration to a mortgage and agricultural lien executed by D. B. McCormick to the defendants Griffin & Saunders, which was dated 26 January, 1914. If Griffin & Saunders' lien, or mortgage, is sufficient in form to vest the title to the property in them, subject to the trust declared therein, they are entitled to recover, as it is of prior date and registration. The plaintiff contends that it is not, and therefore that his mortgage takes precedence of it. The language of the mortgage of McCormick to Griffin & Saunders is as follows:

"I, D. B. McCormick, of the county of Lee and in the State of North Carolina, am indebted to Griffin & Saunders, of Lee County, in said State, in the sum of one hundred and ten and 30-100 dollars, for which they hold my note to be due on 1 October, A. D. 1914, and to secure the payment of the same I do hereby convey to Griffin & Saunders an agricultural lien upon all of the crops of corn, cotton, fodder, peas, shucks, cotton seed, sugar cane, and all other farm products which I may raise or cause to be raised during the year 1914 on the lands of Dandy Thomas in Jonesboro Township, adjoining the lands of Charles Godfrey, Arch Dalrymple, and Rufus Cox and others and any other lands which I may cultivate during the year 1914; also, I convey to them these articles of personal property, to wit: One brown and black horse mule, about 12 years old, known as the Bob Cox mule, one got of Griffin & Saunders,

twenty bushels of corn, nearly (all) of which is white, all of which is free from any encumbrances."

We omit the words of the trust and power of sale contained in the mortgage, as there is no contention that it is not correct in form.

The defendants' mortgage, omitting the words of the trust and power of sale, is as follows:

"I, D. B. McCormick, of the county of Lee, in the State, of North Carolina, am indebted to Jones-Phillips Company, a corporation under the laws of North Carolina, in the sum of $58.75 for advances to be made for agricultural purposes, for which it holds my note to be due 15 October, A. D. 1914; and to secure the payment of the same, I do hereby convey to it these articles of personal property, to wit: All the crops of every description to be raised or caused to be raised by me in the year A. D. 1914 on the lands of Dandy Thomas and any other lands, and it is agreed that this shall take precedence to all other liens; also one buggy, all of which is free from any encumbrances."

*Hoyle & Hoyle for plaintiff, appellee.*
*L. H. Gibbons for defendants, appellants.*

WALKER, J., after stating the case: By comparing the two instruments, it will appear that the difference between them is that defendants' mortgage "conveys to Griffin & Saunders an agricultural lien upon all crops of corn, cotton, fodder," and the other articles, while in plaintiff's mortgage is conveyed substantially the same articles to it, without the use of the words "agricultural lien," etc., but in our opinion there is no essential difference between the two papers, and the defendants' conveys the articles in question with as much certainty and as effectually in law as does the plaintiff's. The lower court thought otherwise, and, having rendered judgment in favor of the plaintiff, the defendants appealed.

The law does not regard the form of things so much as the substance, and it attaches little or no weight to the particular language used in a written instrument, provided that which is employed by the parties expresses their intention with sufficient clearness. Our statute on this subject requires no special form for such instruments. It provides in Revisal, sec. 2055, as follows: "For the purpose of creating a valid agricultural lien under the preceding sections for supplies to be advanced and also to constitute a valid chattel mortgage as additional security thereto, and to secure a preëxisting debt, the following, *or a substantial similar form,* shall be deemed sufficient, and for those purposes legally effective." Then follows the form which may be used. But whether this statute had been enacted or not, the common law,

which remains with us as an entirety, except where it has been amended from time to time to adjust it to ever-changing conditions of society, paid little respect to the form of words by which parties expressed themselves, so that the meaning was disclosed, except in some instances where the use of technical words were required. This is one of the leading rules which has come down to us among the vast number of those wise and beneficent principles of the common law which have survived to this time and are likely to be perpetual.

It is not difficult by reading the defendants' instrument to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument, but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument "after looking," as the phrase it, "at the four corners of it." *Gudger v. White,* 141 N. C., 507, 513.

*Chief Justice Ruffin,* as far back as nearly a century ago, said, in *Kea v. Robeson,* 40 N. C., 378: "Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow. It is so just and reasonable that it should be so that it has long grown into a maxim that favorable constructions are to be put on deeds: *Benigne faciendae sunt interpretationes chartarum, ut res magis valeat quam pereat.* Hence, words, when it can be seen that the parties have so used them, may be received in a sense different from that which is proper to them; and the different parts of the instrument may be transposed in order to carry out the intent. Yet instruments are not unfrequently brought under adjudication which are so repugnant or uncertain that they cannot be upheld. The degree of uncertainty which shall vitiate a deed, it is admitted, must be such that the meaning cannot be ascertained who, for example, are the contracting parties, or what thing is the subject of the contract. An effort is to be made to give some meaning to the deed, if possible." The latin maxim he quotes, when either literally or broadly translated, means that a liberal construction should be put upon written instruments, so as to uphold them, if possible, and carry into effect the intention of the parties.

Mr. Broom, in his admirable treatise on the maxims of the law, thus refers to those now being considered: "The two rules of most general

application in construing a written instrument are: First, that. it shall, if possible, be so interpreted *ut res magis valeat quam pereat,* and secondly, that such a meaning shall be given to it as may carry out and effectuate to the fullest extent the intention of the parties. These maxims are, indeed, in some cases restricted by the operation of technical rules, which, for the sake of uniformity, ascribe definite meanings to particular expressions; and in other cases they receive certain qualifications when applied to particular instruments, such qualifications being imposed for wise and beneficial purposes; notwithstanding, however, these exceptions and qualifications, the above maxims are undoubtedly the most important and comprehensive which can be applied in determining the true construction of written instruments. It is then laid down repeatedly by the old reporters and legal writers, that in construing a deed, every part of it must be made, if possible, to take effect, and every word must be made to operate in some shape or other. The construction, likewise, must be such as will preserve rather than destroy, it must be reasonable and agreeable to common understanding; it must also be favorable and as near the minds and apparent intents of the parties as the rules of law will admit; and, as observed by *Lord Hale,* the Judges ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties; they will not, therefore, cavil about the propriety of words when the intent of the parties appears, but will rather apply the words to fulfill the intent than destroy the intent by reason of the insufficiency of the words."

*Chief Justice Taylor* said, in *Campbell v. McArthur,* 9 N. C., 38: "Words shall always operate according to the intention of the parties if by law they may, and if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention. This is the more just and rational mode of expounding a deed, for if the intention cannot be ascertained, the rigorous rule is resorted to from the necessity of taking the deed most strongly against the grantor."

In 9 Cyc., at page 577 *et seq.,* will be found a series of expressions upon this question which is well worth consideration: The law furnishes certain rules for the construction of written contracts for the purpose of ascertaining from the language the manner and extent to which the parties intended to be bound; and those rules should be applied with consistency and uniformity; and it is not proper for a court to vary, change, or withhold their application. The first and main rule of construction is that the intent of the parties as expressed in the words they have used must govern. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. If the words used clearly show the intention there is no need for applying any technical rules of construction, for

where there is no doubt there is no room for construction. When con-
struing a written contract, the words used are to be taken in the ordinary
and popular sense, unless from the context it appears to have been the
intention of the parties that they should be understood in a different
sense. Language must be interpreted in the sense in which the promisor
knew, or had reason to know, that the promisee understood it. The in-
tention is to be collected, not from detached parts of the instrument,
but from the whole of it. And all parts of the writing, and every word
in it will, if possible, be given effect. Where it is clear that a word
has been used inadvertently, and it is clearly inconsistent with and repug-
nant to the meaning of the parties, it will be rejected altogether. Where
two clauses are inconsistent and conflicting, they must be construed so
as to give effect to the intention of the parties as collected from the
whole instrument. If one clause be at variance with another, the one
contributing most essentially to the contract will be entitled to more
consideration than that which contributes less. The Court will restrict
the meaning of general words by more specific and particular descrip-
tions of the subject-matter to which they are to apply. The contract
must be read according to the intent of the parties in spite of clerical
errors and omissions which, if followed, would change the intention.
The grammatical construction of a contract will not be followed if a
different construction will give effect to the intention of the parties as
shown by the whole instrument and accomplish the object for which the
contract was executed. Where a particular word or words, or the con-
tract as a whole, is susceptible of two meanings, one of which will
uphold the contract or render it valid, and the other of which will
destroy it or render it invalid, the former will be adopted so as to
uphold the contract. The words of a contract will be given a reason-
able construction, where that is possible, rather than an unreasonable
one, and the Court will likewise endeavor to give a construction most
equitable to the parties, and which will not give one of them an unfair
or unreasonable advantage over the other. Thus, where the meaning is
doubtful, the construction will be avoided which will entail a forfeiture.
To determine the intention of the parties if the meaning is not clear,
it is necessary that regard shall be had to the nature of the instrument
itself, the condition of the parties executing it, and the objects which
they had in view. It is a well-settled rule of construction that words
will be construed most strongly against the party who used them, the
reason for the rule being that a man is responsible for ambiguities in
his own expressions and has no right to induce another to contract with
him on the supposition that his words mean one thing, while he hopes
the Court will adopt a construction by which they would mean another
thing more to his advantage.

Some of the cases heretofore decided by this Court with reference to this rule, in addition to *Kea v. Robeson, supra,* are *Triplett v. Williams,* 149 N. C., 394; *Beacon v. Amos,* 161 N. C., 357; *Ipock v. Gaskins, ibid.,* 674; *Jones v. Whichard,* 163 N. C., 241; *Quelch v. Futch,* 172 N. C., 316, and the recent case of *Revis v. Murphy,* 172 N. C., 579.

With this review of the principle of construction and the authorities sustaining it, our way to a correct decision is not beset with any grave difficulties. . No one can successfully prove upon the facts in this case that the intention was not to create an agricultural lien, as well as a mortgage, by the instrument under construction. It would be vain to attempt such a thing.

The next question is, Does the language of the parties evince, as well as effectuate, their purpose? We think it unmistakably does so. It is quite as definite in its terms, as to the nature of the debt to be secured, as that in the plaintiff's lien and as to all the other prerequisites of a valid "agricultural lien," and is really more so, as it expressly recites that it is given as such an instrument, that is, a lien to secure advances of money and supplies made, or about to be made, to assist the lienor in the cultivation of his land, which the use of words "agricultural lien" implies, as there could not be one except for such a purpose.

The case of *Rawlings v. Hunt,* 90 N. C., 270, seems to be a direct authority sustaining defendants' contention. There *Justice Merrimon* said, at pages 273, 274, and it is well to reproduce it here: "We think the deed might be treated as creating an 'agricultural lien' on the crops to secure the advancement of $29.90. It has all the necessary requisites for that purpose, but it goes further in this case; it has all the essential elements of, and it creates, a mortgage on the crops as well as the horse. No particular formula of words is essential to create a mortgage of personal property. Any words that express the purpose to create a lien and give the mortgagee power over and control of the property, with power of sale, or to have it sold to pay the mortgage debt, are sufficient. As we have seen in this case, the mortgagor used apt words of conveyance as to personal property, and provided in terms that the plaintiff should have the right to take possession of the property, including the crops, and sell the same to pay his debt. It is not true, as contended, that an instrument intended as an 'agricultural lien' must effectuate that purpose and none other, or be treated as necessarily inoperative for all purposes. A written instrument, whether deed or otherwise, to create such a lien must indeed conform to the statutory requirements, else it cannot operate to create such lien; but if the instrument will bear such a construction as will effectuate the purpose of the parties, it must be so construed and treated. As, for example, if it would not operate to create the 'agricultural lien,' but has all the requisites of a mortgage of per-

sonal property, it would be so treated and upheld. If a written instrument, as a deed, fails to effectuate one purpose specified in it, yet if it will effectuate another purpose plainly agreed upon in it, it must be upheld for the latter purpose. We can see no reason why it should not be, and in such case every reason why it should be, as completely as if provided for in a separate instrument. Nor can we see any good reason why the same instrument may not be so framed as to operate in one part of it as a mortgage and in another as an 'agricultural lien."

This view is supported, we think, by most of the other cases cited by the plaintiff. But if the instrument operates as a chattel mortgege, it is quite sufficient to defeat plaintiff's recovery. It makes no difference what it is called by the parties, except as showing the intention, for the material question is, What is its real nature in law? We conclude that, by its words, it may operate both as an "agricultural lien" and a chattel mortgage. *Townsend v. McKinnon,* 98 N. C., 103. The amount is fixed certainly, and it sufficiently appears, and is also admitted, what the instrument was given for, and, therefore, what it was intended to be. If by its words it can operate as an agricultural lien, the consideration being advancements for making the current crop, the lien is good, as held in *Hahn v. Heath,* 127 N. C., 27; *Odom v. Clark,* 146 N. C., 551; *Loftin v. Hines,* 107 N. C., 360, and *Townsend v. McKinnon, supra.*

The case last cited is much in point. It was admitted at the trial that both instruments were given for money or property advanced to the lienee for making the crop of 1914, the year in which they were executed. Our conclusion is that the learned judge erred in entering judgment for the plaintiff, as, upon the admitted facts, he should have rendered a judgment for the defendants, and it is accordingly directed that this be done.

Reversed.