J. W. FERGUSON v. THE CHAMPION FIBRE COMPANY.

(Filed 21 December, 1921.)

**1. Deeds and Conveyances—Descriptions—Boundaries.**

The principle upon which a deed to lands must be construed most strongly against the grantor does not extend to including lands not embraced in the description.

**2. Same—Specific Descriptions—General Descriptions.**

The principle upon which a general description may enlarge the boundaries embraced in a more definite description of lands which it follows, depends upon the intent as gathered from the deed that it should do so, and it appears that the grantor intended that the general description was inserted in an attempt to make the specific description more certain.

**3. Appeal and Error—Record—Admissions—Remanding Case—Judgment.**

The Supreme Court will remand the case and order a judgment to be entered in the Superior Court for the appellee, when such appears to be proper upon the facts admitted of record.

APPEAL by defendant from *Long, J.*, at the February Term, 1921, of JACKSON.

This action was brought by the plaintiff to recover damages for cutting timber, and other trespasses on the plaintiff's land, and to remove the claim of the defendant as a cloud on the plaintiff's title.

The cause was heard upon an agreed statement of facts, together with certain oral testimony as appears in the record; and by consent, the judge rendered judgment therein out of term and outside of Jackson County, as of May Term, 1921, of the Superior Court, adjudging the plaintiff the owner of the lands and removing the claim of the defendant as a cloud upon the plaintiff's title as prayed for in the complaint.

As will appear from an examination of the agreed statement of facts, the plaintiff and the defendant claim the land under a common source of title, to wit, what is known as the Olmstead Grant, No. 970, and by a

chain of conveyances to the respective parties; the boundaries of the grant are stated in the third agreement as to the facts, and embrace the land in controversy.

Capitol Letters A to H show Grants #970
Figures 1 to 12 show Queen, Cogdill & Crawford Tract
" 13 to 19 " Grant No. 586 (DAVIS LAND)
Traced from maps and data of Cook and other surveys
by H. R. Queen Mch. 25-1920
Retraced by W. J. Damloft—Aug. 29-1921

But to be more accurate:

1. Both parties claim title to said land by and through grant No. 970, issued by the State to E. B. Olmstead on 10 November, 1867, and by and through the estate and heirs of R. Y. McAden, deceased, as aforesaid. The location of the Olmstead Grant, No. 970, is designated on Queen map aforesaid, commencing at point marked "Ch. Oak" at the capital letter A; thence to capital letters B, C, D, E, and thence to F, at the point marked "Balsam Beach—Jones Knob," and thence to the capital letter G at the point marked "Ash at Balsam Gap," thence west with the line marked "Olmstead or Cathcart line," to the capital letter H; thence with the Keener line to the beginning. It is admitted that the 114 acres of land, more or less, in controversy in this action lies inside of Olmstead Grant, No. 970.

2. The title to the tract in dispute depends upon the construction of a deed made by the McAdens to plaintiff J. W. Ferguson, dated 30 July, 1904, and it is admitted that the specific description in said deed does not cover the disputed area.

3. Defendant also claims title to the disputed tract under deed from and agreement with the McAdens, dated 20 June, 1915, and it is admitted that the deed covers the land, and that title thereto passed by said deed, provided the same had not vested in J. W. Ferguson, under his deed from the McAdens, dated 30 July, 1904.

4. The plaintiff claims that the second description contained in his deed covers the disputed area. Defendant denies that this description covers the land, but admits that if said description does cover the tract that plaintiff has a good title thereto.

The plaintiff holds, and claims, under a deed from John H. McAden, executor and trustee, and others to himself, dated 30 July, 1904, and relies for his recovery, among other things, upon a clause in that deed, which appears therein immediately after the description by metes and bounds, which is substantially as follows: The specific description in the Ferguson deed commences at "A," "Ch. Oak" on map, and this point is by description located in the Cathcart or Indian boundary line; and it is admitted that line A to B on map is the line of Indian boundary, and also line of Cathcart grant 224; and runs with said line to B; with Keener grants to C, and with Keener and Plott grants to D, with the Love line to E, and to F; thence southwest and crossing the mountain with the line of the Davis tract (calling for definite monuments) to the beginning. It is admitted that this description does not cover the land in dispute. It is a definite description except that there was, at the time of the execution of the deed, a dispute as to the north line of Davis tract, No. 586, and so soon as this dispute was settled, the "Floyd Cook line," shown on map, became the true north boundary line of the Davis tract, No. 586, and the description, by metes and bounds, in the Ferguson deed became certain and fixed as the true location.

It being conceded that the description of the land by metes and bounds, above set forth, does not embrace the *locus in quo,* or any part thereof, the plaintiff contends that it is included within the second description in the deed, which is now fully set forth as follows:

"It being the intention of the parties of the first part to convey to the parties of the second part, his heirs and assigns, in fee simple, so much of that part of the boundary of land embraced in State grant No. 970, issued by the State of North Carolina to E. V. Olmstead on 10 November, 1867, for 10,580 acres of land that lies in between the lines of the Cathcart boundary, Indian boundary, and the two Keener tracts and the seven Plott tracts, or grants, of one hundred acres each on the Soco side

of the mountain, and the line of the Love speculation land or Allison grant, No. 251, as claimed by the Love estate, and the line of the Welch or Davis tract, grant No. 586, running from the top of the Jones Knob so as to exclude the Welch or Davis tract, grant 586, but to run with the line of the same, crossing the mountain in the closing line of the land herein conveyed."

The several tracts referred to in said description are shown and designated on the map to be printed as a part of the record. It was admitted at the trial that the line A to B is the line of the Indian boundary and the line of the Cathcart grant, No. 224; that the broken line marked D, E, F, G, is the line of the Love boundary; that the line G to H is also called the Cathcart line; and the Keener line, H to A, is marked "Keener Line." The Plott tracts also are located on the map; the southern line of the Davis tract is marked "Olmstead" or "Cathcart" line. This line crosses the mountain.

The disputed land is designated on the map by the words "Queen, Crawford and Cogdill, and Champion Fibre Company," between the figures 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and back to 1. It was admitted that the lands in dispute lie inside of Olmstead grant, No. 970.

It is proper that we set forth the material part of the deed executed on 20 June, 1915, by Henry M. McAden and others to the Champion Fibre Company, for the purpose of correcting a mistake in the description as contained in the deed of 30 July, 1904, executed by John H. McAden, executor, and others, to J. W. Ferguson, the plaintiff:

"This deed is executed by the parties. of the first part, to the party of the second part, in order to correct the third call in the deed made and executed by John H. McAden, executor, etc., Henry M. McAden and others to J. W. Ferguson, bearing date 30 July, 1904, for the tract of land known as the McAden-Balsam timber tract as aforesaid, so as to vest the title in fee in the said J. W. Ferguson and cover the land intended to be conveyed to him by said deed, and to perfect the title to the Champion Fibre Company to the stumpage rights on certain parts of the said McAden-Balsam timber tract of land as their respective rights may appear, and for the further purpose of conveying to the Champion Fibre Company, party of the second part, the scraps or pieces of land of a few hundred acres lying inside of grant No. 970, to E. B. Olmstead aforesaid, outside of the McAden-Balsam timber tract and the Davis lands—Welch grant, No. 588—and other older and superior titles inside of grant No. 970, and in order to carry out the indenture and agreement of 20 June, 1915, aforesaid."

There was evidence on the one side that the McAdens never listed the disputed land for taxes after the date of their deed to the plaintiff, 30 July, 1904, and, on the other, that it was listed on what is known

as the "Discovery List," but this may not be material in the view taken of the case by the court. The judge held that the plaintiff is the owner of the *locus in quo,* and that he is entitled to have the claim of the defendant declared to be a cloud upon his title, and it was so adjudged. Defendant duly excepted and appealed.

*Felix E. Alley and Manning, Bickett & Ferguson for plaintiff.*
*Sutton & Stillwell and Smathers & Ward for defendant.*

WALKER, J., after stating the facts: It cannot now be questioned, after so much has been said by this and many other courts upon the subject, that a deed must be construed most strongly against the grantor (*R. R. v. Carpenter,* 165 N. C., 465), but that does not mean that its description must be made to include land not conveyed by it. There are two descriptions of the land in this case to be found in the deed in question, one is by metes and bounds, and the other by more general words. It is admitted that the land in dispute is not embraced by the metes and bounds set forth in the deed, but it is contended by the plaintiff that it is included in the other description. The plaintiff argues that if the particular description by metes and bounds does not cover the lands in dispute, it is competent to read it in connection with the second description, although more general in form, in order to show, that while the grantor did not use apt terms to convey any of it by the first description, he did enlarge the boundaries by the second, so that they take in the *locus in quo* as well as the lands first described, and he relies on the case of *Quelch v. Futch,* 172 N. C., 316. It was there substantially held that if the first or specific description is entirely eliminated from the deed, the second, or general description, is sufficient to cover the land described in the complaint, and it matters not that the last description follows the warranty. The whole deed must be so construed as to give effect to the plain intent of the grantor, and the parts of the deed will be transposed if necessary. The entire description in a deed should be considered in determining the identity of the land conveyed, citing *Triplett v. Williams,* 149 N. C., 394; 13 Cyc., 627. And further, that clauses inserted in a deed should be regarded as put there for a purpose, and should be given a meaning that will aid the description. Every part of the deed ought, if possible, to take effect, and every word to operate, and if, from the language of the deed, an intent to convey the entire tract is plainly manifest, this intent will not be defeated because the grantor inserted metes and bounds that are erroneous and do not cover it. As the general description is added, not simply to set out the grantor's title, but to identify and further describe the tract of land conveyed, such general description will be given effect, and the additional clause will be con-

sidered as added for the purpose of giving a more particular or certain description.  *Jones v. McCormick,* 174 N. C., 82;  *Quelch v. Futch,* 175 N. C., 694.  This principle may be conceded when confined within its proper limits, and correctly applied to the special facts under consideration, but we do not deem it applicable to our case.  If the first description by metes and bounds does not embrace the *locus in quo,* the second one should not be allowed to control it, and thereby enlarge its boundaries, unless it was the clear, if not manifest, intention of the grantor to do so and to convey lands not covered by the first description. Instead of showing such a purpose, on the part of the grantor, to extend the boundaries beyond those set forth by metes and bounds, we are of the opinion that the second or further description gives strength and confirmation to the view that it was not the intention of the grantor to do so, but merely to repeat the former description, but in different, and, as he evidently supposed, plainer and more unmistakable language.

It will be observed that the general boundaries of the last description are substantially those of the more particular one, or that by metes and bounds, except in respect to the "Love speculation lands" or "Allison grant, No. 251," as claimed by the Love estate, the last boundary mentioned being "the line of the Welch or Davis tract of land."  There would be a perfect correspondence between the two descriptions, if it were not for the description of the boundary next to the last, or closing line, as the "Love speculation land or Allison grant, No. 251," but the latter is so limited or restricted in its extent by the fact that it does not go beyond, and was not intended to go beyond the "top of the Jones Knob," that this makes but little or no difference.

The closing words of the second description are such as to show almost, if not quite, conclusively that the intention was that the calls should be run with the line of the "Love speculation land," down to its intersection with the line of the Welch or Davis tract (grant No. 586), on the Jones Knob, and from that point, "so as to exclude the Welch or Davis tract (grant No. 586), but to run with the line of the same, crossing the mountain, and as the closing line of the land conveyed, to the beginning.  This must, of necessity, mean, if it means anything, that the closing line is the upper or northern boundary line of the Welch or Davis tract of land, for the reason, at least, if for no other, that we must run from the Jones Knob to the beginning, so as to exclude the Welch or Davis tract, and we would not obey this instruction of the grantor should we run from the Jones Knob by 14, G. H., and thence by the "Keener line" to the beginning at A.  If we should pursue the latter course it would include, instead of exclude, the Welch or Davis tract.  This, we think inevitably follows from the very words employed by the grantor when applied to the map in the record, and our knowledge of the lands, and

the several tracts composing it, in their relative positions with respect to each other. The turning words in the description, and the most significant as indicating the true intention, are those which require us to start on the Jones Knob at the intersection of the Allison and the Welch or Davis line, and run with the latter line, but so as to exclude the Welch or Davis land, grant No. 586 (designated as the Davis tract on the map), to the beginning. Those words were well chosen by the grantor to express the intention that no land should pass by his deed except those described in the first description by metes and bounds, and that the second description was inserted not for the purpose of extending the boundaries of the lands, but merely as another way of making his meaning, in the first description, less liable to misunderstanding. It is the same as if he said, after conveying the lands by metes and bounds, "or, in other words, and to describe the said land more certainly, I declare my intention to be," and then using the language of the second or further description. Nothing in the way of land was to be added to that already conveyed, and this was to appear with greater certainty, if possible, by the use of the definite words of exclusion, that the closing line should be the Welch or Davis line so run from the Jones Knob as to exclude the Welch or Davis tract. If close attention is given to the map when reading these two descriptions together, or even separately, but one conclusion is even permissible, which is the one we have adopted and already stated. There are other considerations which lead us to the same result; one of which is that if we should follow the course, or calls, as suggested by the plaintiff from the Jones Knob to the beginning at A (on the map), we would necessarily have to adopt at least three different calls instead of the two mentioned in the deed, and, besides, there are physical marks, and one line of another tract, in that course which do not appear in the deed; and again, the length of the lines are so different, and still further we may say, that the lower line of the Welch or Davis tract, known as the Olmstead or Cathcart line, is crossed by at least three creeks, or streams, that is, Buff Creek, North Fork, and Woodfin Creek, and Fisher Creek near by, which are not referred to in the deed, while Black Rock Creek and Shulin Creek, which cross the other line near its terminus at A, are mentioned when closely approaching the beginning corner at A (on the map). We are clearly of the opinion that the line of the Cathcart grant, Indian boundary (which means that it is the Indian boundary, the two terms being placed in apposition), is not the Olmstead or Cathcart line, which is the lower or southern boundary of the Welch or Davis tract, and it is so indicated on the court map, but the line of the Cathcart grant, which is the same as the "Indian boundary." The land in this Cathcart grant or Indian boundary lies north or northwest of Soco Creek, Black Rock Creek,

Shulin Creek, and Hornbuckle Creek, and is not anywhere near the Olmstead or lower Cathcart tract. There is no Indian boundary at the latter place or in its neighborhood. There are still other reasons we could assign for the view that the line running from the Jones Knob with the Welch or Davis line is the only one that answers all calls and descriptions, and, too, the only one that will exclude the Welch or Davis tract in returning to A, the beginning corner. The map shows that both lines, the upper and the lower, cross the mountains.

It would appear from the deed dated 20 June, 1915, that in a certain settlement between the McAdens and the defendant, the former conveyed to the latter "the scraps or pieces of land of a few hundred acres lying inside of grant No. 970, to E. B. Olmstead aforesaid, outside of the McAden-Balsam timber tract and the Davis lands or Welch grant, No. 586—and other older and superior titles inside of grant No. 970, and in order to carry out the indenture and agreement of 20 June, 1915, aforesaid." This would indicate that the McAdens did own land within the Olmstead grant, No. 970, described in the deed as "a few hundred acres," other than the lands they had previously conveyed to J. W. Ferguson, and the particular description of these "scraps or pieces of land," if examined in connection with the map, appear to be the *locus in quo,* or in its vicinity, and to include it.

As we have before said, we attach little or no significance to the claim that the McAdens listed no lands for taxation in Jackson County after the date of the deed to J. W. Ferguson, as the evidence concerning it, if not contradictory, is, at least, vague and unreliable, and the plaintiff's testimony relating to it is not at all definite. The county register of deeds testified that certain lands were listed by them on what he called the "Discovery List," that is, as lands omitted from the regular lists, and afterwards discovered as being unlisted.

We have not discussed all the many and variety of questions raised in this case, as it would be vain and useless to do so, but have confined ourselves strictly to those which are the most material and relevant, and which are determinative of the controversy.

As the case was practically decided in the court below upon facts admitted by the parties, we direct that the judgment be reversed, and that the case be remanded to the end that judgment be entered for the defendant.

Reversed.

HOKE, J., did not sit.