GEORGE V. CREDLE v. JAMES W. HAYS and others.

*Deed—Mistake as to course and distance may be corrected.*

A mistake, as to course and distance in the calls of a deed, may be corrected where the means of correcting the same are furnished by more certain descriptions contained in the deed; and where there is a discrepancy between course and distance and the other descriptions, the former must give way.

(*Cooper* v. *White*, 1 Jones, 389; *Person* v. *Roundtree*, 1 Hay., 378; *Campbell* v. *McArthur*, 2 Hawks, 33; *Houser* v. *Belton*, 10 Ired., 358; *Corn* v. *McCrary*, 3 Jones, 496, cited and approved).

EJECTMENT tried at Fall Term, 1882, of HYDE Superior Court, before *Gilliam, J.*

41

A jury trial was waived, and the court found the facts to be substantially as follows:

Both parties claimed title to the land in dispute from B. F. Credle. The *locus in quo* is described by the lines indicated on the diagram by the figures 15, 16, 17 and 18. The plaintiff claimed under a sheriff's deed, purporting to sell and convey the land as the property of B. F. Credle, bearing date the 7th of October, 1878; and the defendants, under a sheriff's deed to Tilson G. Credle, dated July 5, 1869, and also a sheriff's deed (reciting a sale of the land as the property of said Tilson) to Agnes Credle, dated March 4, 1871, and a deed from Agnes to William Credle, one of the defendants.

The land conveyed in the sheriff's deed to Tilson was described as beginning at a school-house on the public road, running in an easterly course to Nasa Farrow's line, thence with his line in a southerly direction to the back line of Sadler's patent, thence westwardly with said patent line to the Credle ditch, leading to Oyster creek, thence northerly with said ditch to the beginning, containing about one hundred acres.

After the purchase of the land at sheriff's sale by Tilson, by

his permission and that of Agnes Credle and the defendant, William Credle, B. F. Credle continued to occupy the house (marked on diagram "B. F. Credle's house"), but claimed no interest in the premises. He had no other house, nor had he owned any other land. The defendants took possession of the land some time before the 7th of October, 1878, and cleared a portion of it about the house, and continuously cultivated it up to the trial.

The land lying south of the line, 15—18, for many years before the trial belonged to one Harris; that on the east of the line, 17—18, was owned by Nasa Farrow; and that on the north of the line, 12—13, belongs to George V. Credle, the plaintiff. Tilson's line runs from 16 to 15. Credle's ditch runs south from 16. The school-house called for is at 15, and Piquet's line runs from 12 to 13.

The judgments under which both the plaintiff and the defendants claim, were founded upon ante-war debts.

The case states that "no question was made on the trial, except as to the construction of the sheriff's deed to Tilson G. Credle, whether upon the facts found, the second call in that deed, 'southerly,' was controlled by the call along Farrow's line, by the second call for Credle's ditch, and be read 'northerly,' and the fourth call, 'northerly,' be read 'southerly,' to reach the school-house, the beginning. It was admitted that with these changes in the calls of the deed to Tilson Credle, that deed would enclose the land then owned and occupied by B. F. Credle—the land in controversy."

His Honor held that the calls in said deed were erroneous, and were controlled by the more certain description of the land in the deed, and gave judgment for the defendants, and the plaintiff appealed.

No counsel for plaintiff.
*Mr. Geo. H. Brown, Jr.,* for defendants.

ASHE, J. It is well settled by repeated adjudications of this court, that where a mistake occurs in the course or distance contained in the calls of a deed, it will not be permitted to disappoint the intent of the parties, if that intent appears, and the means of correcting the mistake are furnished by a more certain description in the deed. *Cooper* v. *White*, 1 Jones, 389; *Person* v. *Roundtree*, 1 Hay., 378; *Campbell* v. *McArthur*, 2 Hawks, 33, and *Houser* v. *Belton*, 10 Ired., 358, in which Chief-Justice PEARSON says that the reason for making course and distance give way to a natural boundary, or the lines of another tract, or to marked lines and corners, is, because a mistake is less apt to be committed in reference to the latter than the former. Indeed, he says, the former is considered the most uncertain kind of description; "for it is very easy to make a mistake in setting down a course and distance, when transcribing from the field-book, or copying from the grant or some prior deed; or a mistake may occur in making the survey, by losing a stick, as to distance; or making a wrong entry, as to course. For these reasons, where there is a discrepancy between course and distance and the other descriptions, the former is made to give way."

In our case, the *intent* of the parties to the deed from the sheriff to Tilson Credle to convey the land owned by B. F. Credle (the defendant in the execution under which it was sold) manifestly appears from the deed itself; and if the calls of courses in the deed should be held to be the true boundary of the land conveyed, the intent of the parties would be entirely disappointed; for the deed, according to the calls, covers no part of the land evidently intended to be conveyed.

The only land owned by B. F. Credle, and in fact the only land ever owned by him, lies to the north of the line leading from the school-house to Farrow's line; but if the calls in the deed should be followed, disregarding the other descriptions contained in it, it would throw the land conveyed entirely on the south of that line, upon the land of Harris, and if there is no

more certain description in the deed to control its calls, the defendant has failed to acquire any title to the land in dispute.

But we think the means of correcting the mistake, in the calls of the sheriff's deed, are amply furnished by the other and more certain descriptions in the deed.

The first call in the sheriff's deed is from the school-house easterly to Farrow's line, which is found to run from 15 to 18 in the diagram. The next call is with his line in a "southerly" direction to Sadler's back line, which is evidently a mistake, for Farrow's line runs northward from the point where it is met by the first call of the deed, and that must control the second call of the deed, whether the line be marked or not. *Corn* v. *Mc-Crary*, 3 Jones, 496. And although His Honor has not found, as a fact, the location of Sadler's back line, which seems to have been in dispute from the plat accompanying the transcript, both parties agree in its location north of the point of intersection of the first call of the deed and Farrow's line, and which ever may be the true location, following Farrow's line to it, the course is *northward*.

The third call is westerly to Credle's ditch, which is found to run from figure 16 in the diagram, south, in the direction of the school-house—an unmistakable description; and then the fourth call *northerly* with said ditch to the beginning, is manifestly a mistake, and must be read *southerly*, or the line would never reach the beginning at the school-house.

So then, the location of the land owned by B. F. Credle, the Farrow line, Sadler's back line, and the Credle ditch, all being found to lie north of the first call of the sheriff's deed, are such descriptions of the land intended to be conveyed as show beyond a doubt that the courses in the second and fourth lines were, through mistake, written *southerly* and *northerly*, instead of *northerly* in the second and *southerly* in the fourth line; and it having been admitted that if these changes in the courses of the deed from the sheriff to Tilson Credle should be made, the deed

covers the land in controversy, then there is no error, and the judgment of the superior court must be affirmed.

No error.                                        Affirmed.