W. T. POTTER v. G. I. BONNER AND WIFE, BESSIE BONNER.

(Filed 12 September, 1917.)

1. Deeds and Conveyances—Definite Description—General Statements.

Where a description to a part of a lot in a conveyance of law is by sufficient and definite metes and bounds, with the statement that one-half thereof was intended to be conveyed, the definite description in case of variance will control the general statement, and the divisional line between that and a subsequent conveyance of the remaining portion of the lot will be established accordingly.

2. Deeds and Conveyances — Descriptions — Grantor's Declarations—Parol Evidence—Statute of Frauds.

Parol evidence may control the description given in a conveyance of lands when the parties, with the view of making the deed go upon the land, make a physical survey of the same, giving it a boundary which is actually run and marked, and the deed is thereupon made, intending to convey the land which they had surveyed, and the mere declaration of a grantor as to a divisional line, at variance with the given description, falls within the meaning of the statute of frauds, and is inadmissible.

ACTION to try the title to land, the whole controversy being dependent on the location of the dividing line between the lot of the plaintiffs and of the defendants.

Sallie Carr Thompson, wife of W. A. Thompson, in 1909 owned a lot in Aurora, N. C., lying on the east side of Fourth Street and north side of Middle Street. In the deed to Mrs. Thompson from F. C. Buck and wife the lot is described as "Beginning at the intersection of Fourth and Middle streets, and runs about east with the center of Middle Street 70 yards; thence about north and parallel with Fourth Street 65 yards; thence about parallel with Middle Street 70 yards; thence with center of Fourth Street 65 yards to the beginning."

By deed dated 12 July, 1909, Sallie Carr Thompson and W. A. Thompson conveyed to Bessie C. Bonner, feme defendant, that portion of said lot described as follows:

"A certain tract or parcel of land in the town of Aurora, Beaufort County and State of North Carolina, adjoining the lands of Nannie Dailey, F. C. Buck and others, and bounded as follows, viz.:

"On the east side of Fourth Street in the town of Aurora, beginning in the center of Fourth Street at a point 110 feet north of the intersection of Fourth and Middle streets, running about east and parallel with Middle Street 210 feet; thence about north and parallel with Fourth Street to the line of the lot belonging to the heirs of J. B. Bonner, deceased; thence about west with the Bonner line to the beginning, containing one-half acre, and being the same lot known as the F. C. Buck home place; and this deed is intended to convey the northern one-half of the

POTTER *v.* BONNER.

said Buck lot, it being Lot No. 1 as conveyed by F. C. Buck and wife to Sallie Carr Thompson by deed dated 23 October, 1906, and recorded in Book 141, page 323."

By deed dated 8 March, 1917, Sallie Carr Thompson conveyed to W. T. Potter, plaintiff, that portion of the Buck lot lying south of the portion conveyed to Bessie C. Bonner, *feme* defendant, the description calling for the line of the defendant.

The defendants admit that the dividing line is as plaintiffs claim, if the following description in the deed to them controls:

"Beginning in the center of Fourth Street at a point 110 feet north of the intersection of Fourth and Middle streets, running about east and parallel with Middle Street 210 feet; thence about north and parallel with Fourth Street to the line of the lot belonging to the heirs of J. B. Bonner, deceased; thence about west with the Bonner line to the beginning," but they contend that the above description is enlarged by the subsequent language, and that if they own the northern half of the Buck lot the dividing line is as they contend.

The defendants further contend that at the time the deed to them was executed there was an actual location of the line as they contend it to be, and that this controls the calls in the deed.

The only evidence for the defendants bearing on the last contention is that of the defendant G. I. Bonner, who testified that he acted for his wife, Bessie Bonner, in procuring the deed executed to her; that the deed was drawn by W. A. Thompson, husband of Sallie Carr Thompson, and was delivered in the office of said Thompson; that they did not go out on the land; that there was a wire fence on the land when the deed was made, running with the line claimed by the defendants, and that Thompson said to him when the deed was delivered, "That is your line up to that fence; that is half of the Buck lot."

There is no allegation of fraud or mistake in the pleadings, nor is an estoppel pleaded.

The jury returned a verdict establishing the line as contended for by the plaintiffs, and the defendants appealed from the judgment rendered thereon.

*Small, MacLean, Bragaw & Rodman for plaintiff.*
*Ward & Grimes for defendant.*

ALLEN, J. The first position of the defendants cannot be sustained because of the well-established rule that when there is a particular and a general description in a deed, the particular description controls. *Carter v. White,* 101 N. C., 30; *Cox v. McGowan,* 116 N. C., 135; *Midgett v. Twiford,* 120 N. C., 4; *L. Co. v. McGowan,* 168 N. C., 87.

The principle was applied in the *Carter case* to a deed containing a description by metes and bounds, and also "known as Walker's Island"; in the *Cox case* to a deed containing the description "being the part of the Burton McGowan land conveyed by him to James H. McGowan," following a particular description, and *Dana v. Middlesex Bank,* 10 Dana, 250, is cited and approved, in which the book and page where the deed referred to was registered was given; and in the *Midgett case,* which is approved in *L. Co. v. McGowan,* to a deed giving a particular description, followed by the words "or the one-fourth part of all the land that my father, Edward Mann, died seized and possessed of."

It was held in these cases (and many others could be cited to the same effect) that the particular description controlled, and that it could not be enlarged to include other lands by the general description.

The second contention of the defendants is also untenable.

The rule prevails with us, as contended by the defendants, that the description of land in a deed may be enlarged or limited by evidence of a cotemporaneous survey, but the rule has always been applied with caution, because, in legal effect, it permits the transfer of title to land by parol, in violation of the statute of frauds, and it may frequently result in wrong and injustice. It not infrequently happens that parties having in contemplation the execution of a deed go upon the land and make an actual survey and locate and mark the boundaries to be included in the deed, and afterwards conclude to shorten or lengthen a line, or to make some other change in the description, and the deed is executed accordingly, and if parol evidence of an actual survey is permitted to control the description in the deed, it, in such cases, would thwart the intent of the parties instead of carrying it into effect. The Courts have therefore been careful to define with particularity the circumstances under which such evidence may be received, and have only permitted it to control the description in the deed "when parties, with the view of making the deed, go upon the land and make a physical survey of the same, giving it a boundary which is actually run and marked, and the deed is thereupon made, intending to convey the land which they have surveyed." *Clarke v. Aldridge,* 162 N. C., 330, and cases cited.

These requirements are not only for the purpose of having the line definitely marked, but also to give publicity to the acts of the parties, and is analogous to the livery of seizin of the common law, where the lord, without writing, in order to invest the tenant with title, went upon the land and in the presence of witnesses delivered a tuft of grass or a twig from the land and declared the tenant to be in possession of the land granted to him.

In this case none of these evidences were present. The parties did not go upon the land; they did not survey it; they did not mark the boundaries, and the defendants must rely upon a simple declaration of one of the grantors made at the time of the execution of the deed without any allegation of a fraudulent intent.

We are therefore of opinion his Honor could have instructed the jury on the facts not in controversy to answer the issue in favor of the plaintiffs, and this view renders it unnecessary to consider the exceptions taken by the defendants in the course of the trial.

No error.

BROWN, J., did not sit.