LEROY LEE v. D. A. McDONALD, JR., AND HELEN STREET McDONALD, HIS WIFE; ANNA LEE McDONALD; ALICE GLENN ROBERTS, SARAH HAYES HEADEN AND HUSBAND, WILLIAM J. HEADEN; P. J. HAYES, JR., AND WIFE, MRS. P. J. HAYES; WILLIAM ALLEN HAYES AND WIFE, MRS. WILLIAM ALLEN HAYES; DANIEL O'CONNOR HAYES AND WIFE, RUTH HINES HAYES, AND PEGGY ANN HAYES.

(Filed 2 June, 1949.)

**1. Boundaries § 1—**

What are the boundaries of a deed is to be determined in accordance with the intent of the grantor as gathered from the four corners of the instrument, and is a question of law for the court; and it is for the jury to determine where the boundaries are actually located.

**2. Boundaries § 2—**

Where a deed states in the description that it includes certain lots, designated by number, but the prior description by metes and bounds does not include such lots in their entirety, the particular description by metes and bounds controls unless it is clear that the grantor intended to convey the additional land not embraced in the particular description.

**3. Same—**

It is only when the specific description is ambiguous, or insufficient, or there is reference to a fuller or more accurate description, that the general description is allowed to control.

**4. Quieting Title § 2—**

Where, in an action to remove cloud from title, defendants have established superior record title to the land in dispute, the court should give defendants' requested instruction that plaintiff is not entitled to recover unless he establishes title by adverse possession by the greater weight of the evidence.

APPEAL by defendants from *Armstrong, J.,* at September Term, 1948, of MOORE.

LEE *v.* McDONALD.

·This was an action to remove a cloud from the title of plaintiff to the land described in the complaint.

The land in controversy fronts 11.43 feet on Business Alley in the Town of Carthage and has a depth of 135 feet, the frontage lying between a concrete marker of the Court House Square in the eastern edge of said alley and a driveway and alley to the South thereof, parallel with Dowd Street, as shown by a map of the Town of Carthage, and on the Court map, Exhibit A, by letters and figures A, 2, 3, B and back to A.

EXHIBIT A

The plaintiff and the defendants claim the true title to the land in dispute.

The plaintiff relies upon certain deeds to show superior title in himself and his predecessors in title under whom he claims. The first deed in point of time was from William H. McCormick, assignee of the estate of Samuel Barrett, bankrupt, to L. Grimm, dated 24 September, 1882, and duly recorded in the office of the Register of Deeds in Moore County, on 24 September, 1886, and again recorded in said office after all records were destroyed by fire when the Courthouse burned in 1889, on 8 January, 1891, which deed contains the following description: "All that piece or parcel of land situate.and lying in the County of Moore and State of North Carolina, and described as follows, to wit: The Barrett Hotel Lots with all the improvements thereon, situate in the Town of Carthage, adjoining the public square and the property of J. M. Monger, together with all the improvements and appurtenances thereunto belonging, or in any way appertaining."

The second deed was from W. B. Richardson to L. Grimm, dated 15 August, 1885, and duly recorded on 31 December, 1885, and re-recorded 26 January, 1891; this deed conveys: "A tract of land in Moore County, State of North Carolina, adjoining the lands of J. M. Monger and the Courthouse Square, in the Town of Carthage, and known as the Barrett Hotel lot and bounded as follows: Beginning at a stake, the corner of the public square, runs thence N. 39 E. 101 links to Barretts' line (William Barretts) formerly Nalls; thence N. 51 W. 149 links to William Barretts' (formerly Nalls') corner on Dowd Street; thence with said street S. 39 W. 101 Links to the public square; thence with the line of the public square S. 51 E. 149 links to the beginning, including Lot No. 37 deeded to A. C. Currie by Neal Morrison, attorney, etc., registered in Book A.C., page 95. Also one other Lot No. 38 formerly possessed and owned by Martin and adjoining the lot whereon Murdoc Bethune formerly lived hereinbefore described deeded by J. Worth, Clerk and Master of the County of Randolph, to A. C. Currie and registered in Register's office of Moore County in Book A.E., page 85. The foregoing description includes the Barrett Hotel, outhouses, garden, yards and all appurtenances and belongings thereto, the same being in the Town of Carthage."

The land in dispute is not embraced within the metes and bounds set forth in the above deed. The southern line of the property conveyed by the metes and bounds description is represented on the Court map, Exhibit A, by the line from A to B. However, the plaintiff claims all of Lots 37 and 38, by reason of the reference thereto as set out in the above deed. Lot 37 is shown on Exhibit A, as containing all the area from A to C, thence to D, to E, to F, to G, and back to A. Likewise, Lot 38 is shown as containing the area from F to E, thence to J, to K, and back

to F. The Barrett Hotel stood on the lot now occupied by the Seawell Building, as shown on Exhibit A, and being a part of Lot No. 37.

The first deed in plaintiff's chain of title, in which the description by metes and bounds contains the disputed area is a deed of partition of the Hotel lot, dated 22 July, 1912, which deed was duly recorded 30 July, 1912. The description in this deed is represented on the Court map Exhibit A, by the figures 1, 2, 3 and 4.

The defendants offered in evidence a deed from J. M. Monger and wife to Ida A. McDonald, dated 4 November, 1891, and duly recorded 14 November, 1896. The description in this deed by metes and bounds does embrace the disputed area, beginning at C, on the Court map, Exhibit A, running thence through A and B to 9, on Barrett Street, thence to W, on Barrett Street; thence from W through 0 to a corner of Law Building site, shown on Court Map, thence N. 51 W. 24 feet, thence S. 39 W. 40 feet to Monroe Street, thence along Monroe Street, to the beginning, being parts of Lots 37, 38, 44 and all of lot 43, according to the evidence and as shown by the Court Map, Exhibit A.

The defendants also offered in evidence a tax deed dated 6 October, 1890, and recorded 7 September, 1895, to D. A. McDonald, conveying the same property described in the above conveyance to his wife Ida A. McDonald. The tax deed was executed by the Sheriff of Moore County and recites that the premises were levied upon and sold to satisfy the unpaid taxes thereon for the years 1884, 1885 and 1886.

The defendants also offered in evidence a quitclaim deed from A. H. McNeill, one of plaintiff's predecessors in title, dated 23 May, 1904, to D. A. McDonald and recorded 1 September, 1909, in which he releases all his right, title and interest in the land formerly owned by J. M. Monger in the Town of Carthage, Moore County, and assigned to the said J. M. Monger as his homestead, from the lien of certain judgments held by party of the first part, the land released "being the whole of the lots in said Town of Carthage numbered in the plan of said Town as Lots Nos. 43 and 44 and a portion of Lots 37 and 38."

The defendants are the heirs of D. A. McDonald and his wife, Ida M. McDonald, together with the spouses of those who are married.

The jury found upon issues agreed upon by the parties, that the plaintiff is the owner of the land in dispute and that the defendants' claim constitutes a cloud upon his title. Judgment was entered to the effect that the plaintiff is the owner of the land in dispute and that the claim of title thereto asserted by the defendants or any of them, is invalid and void, and the same is removed from the described land as a cloud upon the title of the plaintiff.

Defendants appeal and assign error.

*Spence & Boyette for plaintiff.*
*W. A. Leland McKeithan and W. Clement Barrett for defendants.*

DENNY, J.   The defendants except and assign as error the refusal of the court to charge the jury in substance as follows: That a particular description in a deed by metes and bounds which is unambiguous, will control over a reference to lots when there is a discrepancy or ambiguity between the two descriptions.

The intent of a grantor in a deed, like that of a testator in a will, must be gathered from its four corners, and it is the duty of the court to decide as a matter of law, what the boundaries are in a deed, and for the jury to determine where they are actually located. *Gudger v. White,* 141 N.C. 507, 54 S.E. 386; *Von Herff v. Richardson,* 192 N.C. 595, 135 S.E. 533; *Greer v. Hayes,* 216 N.C. 396, 5 S.E. 2d 169; 26 C.J.S. 357.

Ordinarily if a description by metes and bounds does not embrace the *locus in quo,* but such description is followed by the statement "including" lot or lots thus and so, when such lot or lots in their entirety are not embraced in the description, such reference should not be allowed to control and thereby enlarge the boundaries unless it is clear the grantor intended to convey the additional land not embraced in the description by metes and bounds. *Hudson v. Underwood,* 229 N.C. 273, 49 S.E. 2d 508; *Bailey v. Hayman,* 218 N.C. 175, 10 S.E. 2d 667; *Von Herff v. Richardson, supra; Ferguson v. Fibre Co.,* 182 N.C. 731, 110 S.E. 220; *Williams v. Bailey,* 178 N.C. 630, 101 S.E. 105; *Potter v. Bonner,* 174 N.C. 20, 93 S.E. 370; *Lumber Co. v. McGowan,* 168 N.C. 86, 83 S.E. 16; *Midgett v. Twiford,* 120 N.C. 4, 26 S.E. 626; *Cox v. McGowan,* 116 N.C. 131, 21 S.E. 108; *Carter v. White,* 101 N.C. 30, 7 S.E. 473.

In *Cox v. McGowan, supra, Avery, J.,* said: "The parties are presumed to have intended to be governed by the description which they made specific, when it is in conflict with another."

It is only when the specific description is ambiguous, or insufficient, or there is a reference to a fuller or more accurate description, that the general description is allowed to control. *Lewis v. Furr,* 228 N. C. 89, 44 S.E. 2d 604; *Crews v. Crews,* 210 N.C. 217, 186 S.E. 156; *Quelch v. Futch,* 172 N.C. 316, 90 S.E. 259; *Ritter v. Barrett,* 20 N.C. 266 (133); *Campbell v. McArthur,* 9 N.C. 33, 18 C.J. 284.

We think an examination of the original deeds in plaintiff's chain of title reveals that the grantors therein only intended to convey the Barrett Hotel property.   The deed from William McCormick, assignee of the estate of Samuel Barrett, to L. Grimm expressly so states and contains no description by metes and bounds, neither does it refer to any lot number; and in the deed from Richardson to Grimm hereinabove set forth, it will be noted that the grantor describes the property as adjoining the

lands of J. M. Monger and the Courthouse Square, in the Town of Carthage, and *known as the Barrett Hotel lot,* and bounded as follows. Then follows a description by metes and bounds, which description according to the plaintiff's evidence includes no part of the land in controversy. Then after the reference to Lots 37 and 38, this significant statement is added : "The foregoing description includes the Barrett Hotel, outhouses, garden, yards and all appurtenances and belongings thereto, the same being in the Town of Carthage."

Moreover, it appears from the plaintiff's evidence that J. M. Monger lived in a residence located on that part of Lot No. 37, shown on Exhibit A, as "LeRoy Lee property (Page Building)." It further appeared in the quitclaim deed executed by A. H. McNeill, a predecessor in title to plaintiff, to D. A. McDonald, that J. M. Monger had allotted to him as a homestead all of Lots 43 and 44 and a portion of Lots 37 and 38.

It is clear that A. H. McNeill's record title must have been superior to all of Lots 37 and 38 to the record title of J. M. Monger, from whom the defendants claim title, if the plaintiff's record title is superior to that of the defendants. If A. H. McNeill claimed title to all of Lots 37 and 38 at that time, it is difficult to understand why he released all of Lots 43 and 44 and a portion of Lots 37 and 38 to D. A. McDonald, from liens he held against McDonald's predecessor in title, J. M. Monger. Certainly if A. H. McNeill owned all of Lots 37 and 38, as contended by the plaintiff, his liens against Monger would not have been a lien against his own property. Furthermore, if all of these lots belonged to McNeill, or his predecessor in title, why was a portion of them allotted to J. M. Monger as a part of his homestead ?

We think on this record, the defendants have shown a superior record title to the property in dispute.

The defendants also except to the refusal of his Honor to charge the jury that since they hold the superior record title to the land in dispute, the plaintiff cannot recover unless he shows by the greater weight of the evidence that he has obtained title thereto by adverse possession or that his predecessors in title have done so. The exception is well taken, and must be upheld.

Whether the plaintiff and those under whom he claims have obtained title to the land in dispute by the adverse possession thereof for twenty years, or by adverse possession under color of title for seven years, is a question about which we express no opinion. That is a question for the jury on appropriate issues and under proper instructions. But for the reasons herein pointed out, the defendants are entitled to a new trial, and it is so ordered.

New trial.