RICHARD N. WHITEHEART AND HIS WIFE, MARTHA T. WHITEHEART, PETITIONERS, v. JENNIE GRUBBS, RESPONDENT.

(Filed 9 June, 1950.)

**1. Boundaries § 2—**

Ordinarily, the specific description prevails over the general, and it is only when the specific description is ambiguous or insufficient, or reference is made to a fuller and more accurate description, that the general description is allowed to control or is given significance.

**2. Same—**

A specific description by courses and distances which is clear and complete prevails over the general description of the land conveyed as being "a 25 foot strip off the west side" of a designated lot.

**3. Adverse Possession § 8—**

Where there is a lappage in the specific descriptions in respective deeds to adjacent lots derived from a common source, each deed constitutes color of title as to the lappage under the lines and boundaries called for in the deed, and seven years use and occupancy of the lappage by respondent or those under whom she claims, ripens title in her, G.S. 1-38, even though her deed was executed subsequent to the deed for the adjacent lot, there being no evidence of actual occupation of any part of the lappage by the owner of the adjacent lot.

**4. Adverse Possession § 3—**

Where there is a lappage in the specific descriptions in respective deeds to adjacent lots derived from a common source, testimony of respondent, claiming under the subsequently executed deed, that she did not intend to claim anything except what she owns and that she did not want the lappage if it were not hers, but that she had bought and paid for the land, does not negate the hostile character of her possession, but at most is to be considered by the jury in passing upon whether her possession was adverse.

**5. Appeal and Error § 39e—**

The sustaining of objection to a question cannot be held prejudicial when the record fails to disclose what the answer of the witness would have been.

**6. Appeal and Error § 39f—**

Exceptions to the charge will not be sustained if the charge, when read contextually, does not contain prejudicial error.

**7. Trial § 31b—**

Under the 1949 amendment to G.S. 1-180 (Chap. 107, Session Laws 1949) the court is not required to state the evidence except to the extent necessary "to explain the application of the law thereto."

APPEAL by petitioners from *Sink, J., al* 24 October 1949 Term, of FORSYTH.

Procession proceeding instituted 7 December, 1948, to establish dividing line between lands of petitioners and lands of respondent,—converted into an action in the nature of an action to quiet title. G.S. 1-399; G.S. 41-10; *Simmons v. Lee,* 230 N.C. 216, 53 S.E. 2d 79.

The record shows that the controversy relates to land in Rosedale Heights, plat of which is recorded in the office of the Register of Deeds of Forsyth County in Plat Book 5, at page 59.

The petitioners and respondent claim under a common source of title— J. H. White.

The petitioners claim by *mesne* conveyances as follows: (1) A deed from White to Warren Edwards, dated and registered in the year 1928; (2) a deed from Edwards to I. T. Vestal, dated and registered in the year 1934; (3) a deed from Vestal to Alberta Vestal Stewart, dated and registered in the year 1934; and (4) a deed from Stewart to Richard N. Whiteheart and wife, the petitioners, dated and registered in the year 1944.

The respondent claims under a deed from J. H. White to C. E. Miller, dated and registered in the year 1931, and a deed from Miller to Jennie Grubbs, the respondent, dated in the year 1932, and filed for registration in the year 1934.

In the course of the trial in Superior Court, witnesses for the parties illustrated their testimony by references to a diagram on a blackboard, intended by the parties as a rough approximation of the recorded plat of the property. However, by stipulation of the parties, for the record, a photostatic copy of the recorded plat is substituted for the blackboard diagram, and is designated Exhibit A.

This plat shows the property to be situated at the northeast corner of Rose Street and Mill Street,—Rose Street being on the west side and Mill Street on the south. Lots 21, 22, 23, 24 and 25, referred to in the evidence, are shown on the plat. Lot 23 is on the said corner. Lot 24 adjoins and lies east of lot 23. Lot 25 adjoins and lies east of lot 24. Each of these lots has frontage of sixty feet on the north side of Mill Street, and extend northwardly approximately one hundred fifty feet.

The widths of these three lots on the north are as follows: Lot 23—53.3 feet; lot 24—53.3 feet; and lot 25—53.7 feet; a total of 160.3 feet.

And lot 22 adjoins and lies north of lots 23, 24 and 25. It fronts fifty feet on Rose Street and extends eastwardly between parallel lines—fifty feet apart—throughout. The southern line is 160.3 feet in length, the same as the total north width of lots 23, 24 and 25, above given. The northern line of lot 22 is 154.5 feet in length, the same as the southern line of lot 21 which adjoins and lies north of lot 22.

The course of the east line of lots 25 and 22 is North 5° 55″ East.

The description in the deed from J. H. White (1928) to Warren Edwards, and in each of the deeds through and under which petitioners claim title, reads as follows: "Beginning at a stake on Mill Street, the southeast corner of lot #23, and running east 25 feet to a stake; thence north 199.4 feet to the north line of lot #22; thence west 78.3 feet; thence south 50 feet to the northwest corner of lot #23; thence east 53.3 feet to the northwest corner of lot #24; thence south 149.4 feet to the beginning on Mill Street, the same being known and designated as parts of lots numbers 22 and 24 on the plat of Rosedale Heights, recorded in the office of the Register of Deeds in Plat Book 5, page 59, to which plat reference is made for a more particular description."

And the description in the deeds from J. H. White (1931) to C. E. Miller, and from Miller to respondent, and under which she claims title, reads as follows: "Beginning at an iron stake in the north margin of Mill Street, it being the southeast corner of lot 25, and running thence northwardly with the east line of lots 25 and 22, 200 feet to an iron stake, it being the northeast corner of lot 22; thence westwardly with the south line of lot 21, 95 feet to an iron stake in the south line of lot 21; thence southwardly on a new line 200 feet more or less to an iron stake in the north margin of Mill Street; thence eastwardly with the north margin of Mill Street 95 feet to the beginning, and being known and designated as all of lot 25, all of lot 24, except a 25 foot strip off of the west side, and the east end 50 by 95 feet, of lot 22, as shown on the plat of Rosedale Heights as recorded in Plat Book 5, at page 59, in the office of the Register of Deeds of Forsyth County."

The calls of the descriptions in the deeds under which petitioners claim, and of the description in the deeds under which respondent claims, as superimposed upon the recorded plat, as aforesaid, show a lappage,—triangular in shape, starting at a point designated "A" in the north margin of Mill Street; and running northwardly to a point "B" in the north line of lot 22 and in south line of lot 21,—represented to be 76.2 feet west of the northeast corner of lot 22; and 78.3 east of the northwest corner of lot 22; and running westerly with the dividing line between lots 22 and 21 to point "C" in said line representing to be in said line

WHITEHEART *v.* GRUBBS.

18.6 feet west of the point "B," and 94.8 feet from the northeast corner of lot 22; and running thence in a southerly direction to the point "A" on Mill Street as aforesaid. '

Petitioners claim to the line A-B. Respondent claims to the line A-C. In her answer, respondent denies the location of the dividing line to be as alleged by petitioners in their complaint, and avers that she owns the land covered by the description in her deed, and, hence, that the proceed-

ing is not one of disputed boundary line, but of title. And respondent pleads in her answer, as bar to petitioners' right to recover any part of the lappage, that she has had adverse possession of all the lappage, so represented on the plat, under color of title for more than seven years as provided in G.S. 1-38, and for twenty years as provided in G.S. 1-40.

Upon the trial in Superior Court, and after petitioners first had rested their case, J. H. White and Robert Edwards, son of Warren Edwards, testified as witnesses for respondent. Their testimony tends to show that at the time White was selling the twenty-five feet frontage on Mill Street to Warren Edwards (1928), White, with the assistance of Robert Edwards, and in the presence of Warren Edwards, measured with a tape line 95 feet from the southeast corner of lot 25, and put in an iron stake, a Ford shaft or axle, in the north margin of Mill Street, represented on the plat as the point "A"; that he then measured off 95 feet from the northeast corner of lot 22, and put in an iron stake, a Ford shaft or axle, in the north line of lot 22, represented on the plat as point "C"; that these iron stakes are there now, and are at the same locations; that there was never any dispute between White and Edwards or between Edwards and respondent after she purchased as to the location of the line A-C as the dividing line between them.

Respondent and her son, R. V. Grubbs, also testified in her behalf. Their testimony tends to show that when she bought from C. E. Miller there was an out-house or toilet located "almost against the stob" at the point "C"; that it has been maintained ever since, with a path from the house along the line A-C; that in 1933 her son set out two mimosa trees on the property east of the line A-C and west of the line A-B, and she has looked after them, and claimed them as her own ever since; that in 1932 respondent put up and has maintained clothes-line posts and clothes-line on the area east of line A-C and west of line A-B; that on this area she has had a plum tree, grape vines, some apple trees, and peach trees; that she has gathered grapes ever since she has been living there,—the grape vine being there when she purchased; that on this area respondent has had a chicken yard, and cultivated a part of it as a garden,—ploughing up to the path that leads to the out-house or toilet; that from the street to the front of the house and on back by the house she has a rose-bush and a dogwood tree; and that respondent has a lawn, and has sowed grass and mowed the lawn along the front to the line A-C. The testimony offered by respondent further tends to show that when she was negotiating with Miller for the purchase of the property, he showed her, on the ground, stakes at the corners—including the iron stake at the point "C," and that she measured some of the lines; that the property she bought fronted 95 feet on Mill Street and 95 feet on the south line of lot 21; and that after she bought "none of the parties that lived in the house

where Mr. Whiteheart now lives put a lawn on or put out shrubbery or otherwise tended or improved any part of the land east of line C-A which" she claims as her line.

And there was testimony tending to show that from the iron stake at point "C" there was nothing to obstruct the view along the line to the point "A."

The respondent, through her counsel of record, in open court, upon the conclusion of all the testimony and before the beginning of the argument, concluded that she had no right or title to the lands and premises in dispute save and except upon her pleadings as they relate to (1) the seven-year statute of adverse possession under color of title, and (2) the twenty-year statute of adverse possession.

The case was submitted to the jury on these three issues, which the jury answered as shown:

"1. Has the respondent, Jennie Grubbs, been in possession of the real property indicated within the points A, B and C under known and visible lines and boundaries and under color of title for seven years preceding the commencement of this action, as alleged in her reply?

"Answer: Yes.

"2. Have the respondent, Jennie Grubbs, and her predecessors in title possessed the real property within the points A, B and C under known and visible lines and boundaries adversely to all other persons for twenty years preceding the commencement of this action, as alleged in her reply?

"Answer: No.

"3. Are the petitioners Richard N. Whiteheart and his wife, Martha T. Whiteheart, the owners and entitled to the immediate possession of the lands lying westward of the line as alleged by them in their petition?

"Answer: No."

From judgment declaring respondent to be the owner of the land in question, etc., petitioners appeal to the Supreme Court and assign error.

*Ingle, Rucker & Ingle for plaintiffs, appellants.*
*Parker & Lucas for defendant, appellee.*

WINBORNE, J. Appellants state in their brief five questions as being presented by their assignments of error on this appeal. The first three appear to be predicated upon their exception to the denial of their motions for judgment as of nonsuit as to respondent's further defense based on her pleas of adverse possession of the land in controversy. The fourth relates to the exclusion of certain evidence. And the fifth relates to alleged failure of the trial judge to properly charge the jury. After

careful examination of the questions so raised, we hold that prejudicial error is not made to appear.

As to the three questions relating to nonsuit: The first and basic contention of appellants is that the description in the deeds under which the respondent claims does not cover the land in controversy represented by the letters A to B to C and back to A. This contention, apparently, is based upon the assumption that the specific or particular description in these deeds is controlled by the general description which follows.

In this connection, the rule is that where there is a particular and a general description in a deed, the particular description prevails over the general. *Carter v. White,* 101 N.C. 30, 7 S.E. 473; *Cox v. McGowan,* 116 N.C. 131, 21 S.E. 108; *Midgett v. Twiford,* 120 N.C. 4, 26 S.E. 626; *Loan Asso. v. Bethel,* 120 N.C. 344, 27 S.E. 29; *Johnston v. Case,* 131 N.C. 491, 42 S.E. 957; *Lumber Co. v. McGowan,* 168 N.C. 86, 83 S.E. 8; *Potter v. Bonner,* 174 N.C. 20, 93 S.E. 370; *Bailey v. Hayman,* 218 N.C. 175, 10 S.E. 2d 667; *Lewis v. Furr,* 228 N.C. 89, 44 S.E. 2d 604; *Lee v. McDonald,* 230 N.C. 517, 53 S.E. 2d 845.

It is only when the specific description is ambiguous, or insufficient, or the reference is to a fuller and more accurate description, that the general clause is allowed to control or is given significance in determining the boundaries. 18 C.J. 284. *Campbell v. McArthur,* 9 N.C. 33; *Ritter v. Barrett,* 20 N.C. 266; *Quelch v. Futch,* 172 N.C. 316, 90 S.E. 259; *Crews v. Crews,* 210 N.C. 217, 186 S.E. 156; *Lewis v. Furr, supra.*

Applying this principle to description in the deeds under consideration, the particular description is clear and specific, and, when considered in connection with the admitted plat, leaves no room to doubt that it covers the land in controversy. Such being the case, it prevails over the general description which follows.

The second question, taking for granted that the description in respondent's deed covers the land in controversy, assumes that the "evidence fails to disclose the essential elements of notoriety with respect to the boundaries under adverse possession."

In this connection, since the deeds under which petitioners claim and the deeds under which respondent claims cover the land in controversy, the subject of the relative rights of the parties in respect to the lappage is presented. The pertinent rules in this respect, established by decisions of this Court, are set forth by *Stacy, C. J.,* in *Vance v. Guy,* 224 N.C. 607, 31 S.E. 2d 766, in this manner:

"1. Where the title deeds of two rival claimants to land lap upon each other, and neither is in actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in the one who has the better title.

"2. If one be seated on the lappage and the other not, the possession of the whole interference is in the former.

"3. If both have actual possession of some part of the lappage, the possession of the true owner, by virtue of his superior title, extends to all not actually occupied by the other."

And the subject is fully discussed in the case of *Currie v. Gilchrist,* 147 N.C. 648, 61 S.E. 581, and summarized in part as follows: "We may therefore take it to be settled by this Court by a long and unvarying line of decisions that if the person who claims under the elder title have no actual possession on the lappage, such possession, although of a part only, by him who has the junior title, if adverse and continued for seven years, will confer a valid title for the whole of the interference,—the title being out of the State." See *Berry v. Coppersmith,* 212 N.C. 50, 193 S.E. 3, and cases cited.

Testing the case in hand by these rules, there is no evidence that petitioners or those under whom they claim have been in actual occupation of any of the lappage. And there is evidence that respondent has been in actual occupation of it.

Hence, her possession, if adverse and continued for seven years, would confer a valid title for the whole of the lappage. Adverse possession must be under known and visible lines and boundaries, and under colorable title. G.S. 1-38. In the present case the lines and boundaries, as the evidence tends to show, are well defined, visible, and known. And the deed to respondent under which she claims is sufficient to constitute color of title. *Lofton v. Barber,* 226 N.C. 481, 39 S.E. 2d 263.

The third question is based upon the express assumption that "the testimony of the defendant (respondent), as a witness on her own behalf, discloses that she had no intent of claiming possession against the true owner."

While respondent, under cross-examination, said that it has never been her intention to claim anything except what she owns, that if she could not hold this land honestly, she does not want it, and that she did not want the property if it were not hers, she does say that she bought it and paid for it. At most these statements were fit to be considered by the jury in passing on the question as to whether her possession was adverse. See *Dawson v. Abbott,* 184 N.C. 192, 114 S.E. 15.

The fourth question is a challenge to the ruling of the court in sustaining objection to this question: "If you had known that an earlier deed had conveyed this property that is in dispute to Mr. Whiteheart or somebody owned it before him, a deed that was earlier than your deed from Mr. Miller, it wouldn't have been your purpose to claim that property, would it, that is in dispute?" The record does not disclose what the answer of the witness would have been. In the absence of such a show-

ing error is not made to appear. *Wilson v. Scarboro,* 169 N.C. 654, 84 S.E. 1017.

The fifth question is directed to the charge of the court,—to portions of the charge given, and to failure to state the evidence and to comply with provisions of G.S. 1-180. Reading the portions to which exceptions are taken in proper connection with that which precedes and that which follows each, prejudicial error is not made to appear. And in connection with the alleged failure to comply with provisions of G.S. 1-180, it must be noted that this statute was rewritten by Chapter 107 of 1949 Session Laws of North Carolina. Under this statute, as so rewritten, the judge is not required to state the evidence given in the case "except to the extent necessary to explain the application of the law thereto." Testing the charge by this provision of the statute, it may not be successfully contended that the presiding judge failed in his duty in this respect.

All assignments of error have been given due consideration and in the judgment below, we find

No error.