BYRON W. FRANKLIN AND MARIETTA G. FRANKLIN, AND KIRBY JONES AND GLADYS J. JONES v. THOMAS H. FAULKNER AND EVELYN O. FAULKNER.

(Filed 17 September, 1958.)

**1. Boundaries § 1—**

In construing the description in a deed, the intent of the parties as ascertained from the words employed, in accordance with the general rule for the construction of deeds, wills or contracts, must be given effect.

**2. Same—**

Settled rules of construction will be applied to the language of an instrument in ascertaining the intent of the parties.

**3. Same—**

In ascertaining the intent of the parties from the language of an instrument all the words used are presumed to have a meaning selected for the purpose of displaying the user's intent.

**4. Same—**

A general description will not enlarge a specific description when the latter is in fact sufficient to identify the land which it purports to convey, and a general description will prevail over a specific description only when the specific description is ambiguous and uncertain.

**5. Boundaries § 2—**

Where a conflict exists in the description of property between a call for a natural object and a course or a distance or course and distance, the call for the natural object will prevail.

**6. Same—**

A known line of another tract, or a ditch, or a road is a natural object which will control course and distance.

**7. Same—**

Where the call in a deed is specific as to distance, but a quadrant of the course is omitted, such specific description cannot be held void for uncertainty when the missing quadrant of the course is supplied with

certainty by a call to a natural object. In this case by calls from the northwestern corner of the lot along the northern line of the lot and from the eastern terminus of such northern line with an established lane.

PARKER, J., took no part in the consideration or decision of this case.

Appeal by defendants from *Parker, J.,* February 1958 Term, of CRAVEN.

Plaintiffs alleged ownership of a parcel of land specifically described in the complaint and a claim of title thereto by defendants which constituted a cloud thereon.

The defendants denied plaintiffs' ownership. They alleged they were the owners of all of Lot 3 in Trent Acres as shown on a map made in February 1946, which lot was conveyed to them in July 1954.

The parties waived jury trial. They stipulated:

"1. That both plaintiffs and defendants claim from a common source, to wit, conveyances from and out of J. S. Miller and wife, Mattie S. Miller;

"2. That the eastern boundary of Lot #3 extends to Wilson's Creek as shown and designated on map made and prepared by Albert R. Bell, dated July 7, 1951, entitled 'Plan of Trent Acres, 3 miles South of New Bern, North Carolina,' recorded in Public Registry of Craven County in Map book #5 at page 28, and that the southern boundary of Lot #3 extends to Trent River, as shown on the aforesaid map, and that the aforesaid boundaries as shown on said map, dated July 7, 1951, are the identical boundaries as shown on a previous map prepared by Albert R. Bell, dated February, 1946, entitled 'Plan of Trent Acres, 3 miles South of New Bern, North Carolina,' and recorded in the Public Registry of Craven County in Map Book #2 at page 115;

"3. That all references in conveyances from and out of J. S. Miller and wife, Mattie S. Miller, a common source of title for both plaintiffs and defendants, shall be construed to apply to the road drawn and designated on map by Albert R. Bell, dated July 7, 1951, as aforesaid beginning at Point A in the northern portion of Lot #3 and extending southward, then eastward, to the west boundary of Lot #2A, as shown on said map prepared by Albert R. Bell, dated July 7, 1951, the courses and distances of which are set forth thereon under the following designation: 'Courses and Distances, A to B.' "

The deed from J. S. Miller and wife, Mattie S. Miller, to Mary E. Angell and husband, Nelson P. Angell, dated 15 February 1950, which is the basis of defendants' claim of title to the land in controversy, describes the property conveyed by this language: "A certain lot or parcel of land lying and being situated in Craven County, North Carolina, No. 8 Township, and in that certain subdivision known and

designated as Trent Acres, a plan of which was prepared by Albert R. Bell, February, 1946, and is duly recorded in office of the Register of Deeds of Craven County in Map Book II, page 117; and being a part of Lot No. 3 according to said plan; and being described as follows:

"Beginning at a stake at the Northwest corner of Lot No. 3 and running thence S 61 deg. 40' and with the Northern line of Lot No. 3, 141 feet to a stake; thence S 2 deg. 38', 30 feet to the Western line of the 20-foot lane on the edge of the highland; thence with the Western line of the said lane to the Western line of Lot No. 2; thence with the line of Lot No. 2 to the river; thence westwardly along the said river front to the southwest corner of Lot No. 3 as shown on said map; thence North 13 deg. 50', 374 feet to the point of beginning.

"The intention of this deed is to convey all of Lot No. 3 except the small corner at the northeastern corner, which is reserved by the parties of the first part for making a turn into the 20-foot lane heretofore referred to."

The map recorded in Book II referred to in the deed from Miller to Angell shows the main road leading from the subdivision to New Bern. This road is the northern boundary of Lots 5 and 6. Lot 4 is south of Lot 5, and Lot 3, south of Lot 4. Lot 2 is east of Lot 3, and Lot 1 is east of Lot 2. Wilson's Creek forms the eastern boundary of Lots 5, 4, and 3. The creek makes a turn to the east at the line dividing Lots 3 and 2, and then forms the northern boundary of Lots 2 and 1. Wilson's Creek is a tributary of Trent River, which forms the southern boundary of Lots 3, 2, and 1. The western boundary of Lots 5, 4, and 3, is a 20-foot lane extending from the main road southwardly to Trent River. This 20-foot lane is intersected at a point 400 feet southwardly from the main road by another 20-foot lane which separates Lots 4 and 3. The southern line of Lot 4 is shown as running south 61 deg., 40' east to Wilson's Creek. The southern line of the 20-foot lane separating Lots 4 and 3, which is the northern line of Lot 3, is shown as parallel with the southern line of Lot 4. The 20-foot lane separating Lots 3 and 4 extends eastwardly to a "20- . . . lane on edge of high ground." The intersection of the two lanes is shown as 170 feet eastwardly from the northwest corner of Lot 3. The lane along the highland is in proximity to but west of Wilson's Creek. It extends southwardly to the western line of Lot 2. The map recorded in Book II does not show the courses of the 20-foot lane which extends southwardly from Lot 4 to Lot 2. It merely shows that it is on the edge of the high ground.

On 7 July 1951 Bell, draftsman of the 1946 map, supplemented that

map by a map recorded in Map Book V at page 28. This is the map referred to in the stipulation. A note on the supplementary map reads: "Lots 1 & 2 have been subdivided into 4 parts as shown on this map. Access is provided by the 20-foot road, the courses & distances of which are shown above." Shown above that notation are the courses and distances of the 20-foot lane extending southwardly from the lane dividing Lots 4 and 3 to a point near the confluence of Trent River and Wilson's Creek.

The land claimed by plaintiffs lies between Wilson's Creek and the 20-foot lane, the courses and distances of which are stated on the map of 1951. Plaintiffs base their claim to the land on a deed from Miller to them dated 27 November 1954. This deed admittedly covers the land in controversy.

Upon the stipulations and exhibits the court adjudged plaintiffs the owners of the land in controversy. Defendants excepted and appealed.

*Lee & Hancock for plaintiff, appellees.*
*H. P. Whitehurst and Warren S. Perry for defendants, appellants.*

RODMAN, J. What property did Miller convey to Angell by the deed of 15 February 1950? The answer is determinative of the appeal and must be found by ascertaining the intent of the parties to that instrument.

When courts are called upon to interpret deeds or other writings, they seek to ascertain the intent of the parties, and, when ascertained, that intent becomes the deed, will, or contract. In determining the intent they call to their aid principles which have been so consistently applied as to be described as settled rules of construction. *Griffin v. Springer,* 244 N.C. 95, 92 S.E. 2d 682; *Davis v. Brown,* 241 N.C. 116, 84 S.E. 2d 334; *Stephens Co. v. Lisk,* 240 N.C. 289, 82 S.E. 2d 99; *Whitson v. Barnett,* 237 N.C. 483, 75 S.E. 2d 391; *Sugg v. Greenville,* 169 N.C. 606, 86 S.E. 695; *Credle v. Hays,* 88 N.C. 321.

It is a well-established rule that the intent of a party is to be ascertained by the words he chooses. All of the words used are presumed to have a meaning selected for the purpose of displaying the user's intent. *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298; *DeBruhl v. Highway Comm.,* 245 N.C. 139, 95 S.E. 2d 553; *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619; *Marks v. Thomas,* 238 N.C. 544, 78 S. E. 2d 340; *Hornaday v. Hornaday,* 229 N.C. 164, 47 S.E. 2d 857; *Sharpe v. Isley,* 219 N.C. 753, 14 S.E. 2d 814; *Whitley v. Arenson,* 219 N.C. 121, 12 S.E. 2d 906; *Dicks v. Young,* 181 N.C. 448, 107 S.E. 220; *R. R. v. R. R.,* 147 N.C. 368.

It is equally well settled that a general description will not enlarge a specific description when the latter is in fact sufficient to identify the land which it purports to convey. Only when the attempted specific description is ambiguous and uncertain will the general prevail. *Young v. Asheville,* 241 N.C. 618, 86 S.E. 2d 408; *Moore v. Whitley,* 234 N.C. 150, 66 S.E. 2d 785; *Whiteheart v. Grubbs,* 232 N.C. 236, 60 S.E. 2d 101; *Lee v. McDonald,* 230 N.C. 517, 53 S.E. 2d 845; *Lewis v. Furr,* 228 N.C. 89, 44 S.E. 2d 604; *Von Herff v. Richardson,* 192 N.C. 595, 135 S.E. 533; *Potter v. Bonner,* 174 N.C. 20, 93 S.E. 370; *Carter v. White,* 101 N.C. 30.

Where a conflict exists in the description of property between a call for a natural object and a course or a distance or course and distance, the call for the natural object will prevail. *Trust Co. v. Miller,* 243 N.C. 1, 89 S.E. 2d 765; *Cherry v. Warehouse Co.,* 237 N.C. 362, 75 S.E. 2d 124; *Lance v. Cogdill,* 236 N.C. 134, 71 S.E. 2d 918; *Brown v. Hodges,* 233 N.C. 617, 65 S.E. 2d 144; *Lumber Co. v. Bernhardt,* 162 N.C. 460, 78 S.E. 485; *Sherrod v. Battle,* 154 N.C. 345, 70 S.E. 835; *Bowen v. Lumber Co.,* 153 N.C. 366, 69 S.E. 258; *Bowen v. Gaylord,* 122 N.C. 816; *Safret v. Hartman,* 52 N.C. 199; *Hough v. Horne,* 20 N.C. 369; *Slade v. Neal,* 19 N.C. 61; *Cherry v. Slade,* 7 N.C. 82; *Pollock v. Harris,* 2 N.C. 252; ........... *v. Beatty,* 2 N.C. 376.

A known line of another tract is a natural object which will control course or distance. A ditch or a road is a natural object. *Brown v. Hodges, supra; Hough v. Horne, supra.*

Appellants in their brief say they "rest their case on the fact that it is surely the intention of Miller and wife, grantors of Angel, to convey 'all of Lot No. 3.' It is so stated in uncontradictable terms that it was their intention so to do."

Contrary to appellants' assertion the deed itself negatives any idea that grantors intended to convey all of Lot 3. By express language they convey "parcel of land . . . being a *part of* Lot No. 3 according to said plan; and being described as follows:" (Italics added.) Then follows the specific description of the part of Lot 3 which is conveyed. Following this specific description grantors say: "The intention of this deed is to convey all of Lot No. 3 *except* . . ." (Italics added.)

Appellants arrive at their asserted uncontradictable intent to convey all of Lot 3 by this reasoning: One quadrant is missing in each of the first two calls. The absence of these compass points renders the specific description void. Hence, in effect, the specific description is stricken from the deed. It would then read: "The intention of this deed is to convey all of Lot No. 3 except the small corner at the northeast corner . . ." Next they say this exception is too indefinite to admit of identification and must therefore be disregarded. There would then

be left in the deed only this descriptive language: "The intention of this deed is to convey all of Lot No. 3."

It is apparent that the argument must fail unless the premise is well founded that the specific description is inadequate to identify the property conveyed. The answer to that inquiry is dependent on the factual situation. These admitted facts appear:

1. The northwest corner of Lot 3 is at the intersection of two 20-foot lanes.

2. The northern line of Lot 3 is the southern boundary of one of these 20-foot lanes.

3. The northern line of Lot 3 extends from its northwest corner south 61 deg. 40' east to Wilson's Creek, more than 200 feet distant from the northwest corner.

The call in the deed in controversy is: "Beginning at a stake at the Northwest corner of Lot No. 3 and running thence S. 61 deg. 40' *and with the Northern Line of Lot No. 3, 141 feet* to a stake . . ." (Italics added.) Since the call is with the northern line of the lot, it necessarily follows that the missing quadrant is east. The point where this line terminates is definitely fixed at 141 feet. Hence there is and can be no doubt as to the location of the first call in the description.

4. A 20-foot lane crosses the eastern portion of Lot 3, extending from Lot 3 to Lot 2. This lane or road is at the edge of the highland and was in existence when the deed was made to Angell. This road or lane runs in a southwardly direction. The stipulation is that the courses of this road as shown on the map made in 1951 were in fact the courses of the road as it existed in February 1950.

5. The western line of the road on the edge of the highland, the terminus of the second call in the description, is 170 feet S 61 deg. 40' east of the northwest corner of Lot 3.

6. A course south 2 deg. 38' *east* from the terminus of the first call intersects the western line of the 20-foot lane on the edge of the highland. This is the place called for in the description. The course given to a natural object is a mere pointer. The natural object called for, the road, is admitted. The course given accurately points to the designated place. The missing quadrant on the call S. 2 deg. 38' ........ is supplied. Turning at 141 instead of 170 would enlarge the intersection of the two lanes so that one traveling from the main road to Lot 2 would have a more convenient approach.

7. Having arrived at "the western line of the 20 foot lane on the edge of the highland" in accord with directions given in the deed, there is no difficulty in following the road called for in the Miller-Angell deed and the remaining courses there given.

Since that part of Lot 3 which Miller conveyed to Angell is, when considered in the light of stipulated facts, sufficiently described for

identification, it follows that effect must be given to the intent there declared. The land in controversy was not conveyed by the deed of February 1950 from Miller to Angell. Hence the judgment is
Affirmed.

PARKER, J., took no part in the consideration or decision of this case.